JUAN I. GORBEA, demandante y apelado, *v.* MARÍA MONSERRATE SANTIAGO ET AL., demandados y apelantes.

Núm. 9439.—*Sometido:* Mayo 7, 1947. *Resuelto:* Julio 16, 1947.

*Raúl Matos,* abogado de los apelantes; *Joaquín Velilla,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Juan I. Gorbea radicó demanda ante la Corte de Distrito de San Juan, que luego fué trasladada a la de Distrito de Ponce y más tarde enmendada. En ésta alega sustancialmente que en mayo de 1944 los demandados solicitaron sus servicios como contador público autorizado respecto de cierta investigación que el Departamento de Hacienda estaba practicando en relación con los ingresos del causante de los demandados para los años naturales contributivos de 1935 y 1936 bajo la Ley de Contribuciones sobre Ingresos; que a virtud de ese requerimiento él procedió a estudiar y preparar el caso de los demandados, trabajando una veces en Ponce y otras en San Juan, así como en oficinas del Gobierno Insular, mediante la recopilación de datos, libros, estados, borderós, escrituras públicas, balances de números, nóminas, balances de instituciones bancarias y otra documentación indispensable, para lo cual trabajó desde mayo hasta mediados de octubre de 1944; que mientras realizaba la labor antes mencionada, en 13 de julio de 1944 se envió a los demandados notificaciones de deficiencias para los referidos años, ascendiendo las mismas a $117,705.21; que a petición de los demandados el demandante solicitó una vista administrativa ante el Departamento de Hacienda, que les fué concedida y a la cual asistió él en representación de los demandados; que en 9 de octubre de 1944 el Departamento de Hacienda dictó resolución determinando el pago de la siguiente contribución: $11,607.11 para 1935, y *nada* para el 1936; que notificados por el demandante, los demandados satisficieron dicha cantidad de $11,607.11 al erario público; que concluídos los servicios profesionales del demandante mediante la aceptación por los demandados de la indicada resolución administrativa del Tesorero de Puerto Rico, en 20 de octubre de 1944 él requirió a los demandados el pago de sus servicios, remitiéndoles un borderó por la suma de $26,524.53; que los de-

mandados no le han satisfecho dicha cantidad ni total ni parcialmente y que los servicios por él prestados a la sucesión demandada justa y razonablemente valen la referida suma.

Los demandados contestaron a la demanda enmendada aceptando algunos de los hechos alegados, negando otros y levantando como defensas especiales y separadas "que el demandante no tiene derecho a compensación alguna por los servicios profesionales que prestara a los demandados y que relaciona en la demanda enmendada, en razón a que los servicios referidos fueron pactados entre el actor y los demandados por la suma de $2,500, que fueron pagados por los últimos al primero," y "que en el supuesto, que niegan los demandados, de que no se hubieran convenido los servicios por suma alguna de dinero, que no es el caso, el demandante ha recibido una retribución mayor por los servicios profesionales prestados a los demandados, de lo que en realidad de verdad valen dichos servicios."

Fué el pleito a juicio y la contienda principal giró en torno a si entre las partes litigantes existió un solo contrato de servicios o si por el contrario existieron dos.

De la prueba aducida se desprende que allá para el mes de febrero de 1944 uno de los demandados, actuando a nombre de éstos, requirió al demandante para que hiciera un examen general de los libros de contabilidad de Vicente Usera Laseda, causante de la sucesión demandada, pues se tenía conocimiento de que Juan Jusino Serrano, extenedor de libros de la casa, había hecho cierta delación al Departamento de Hacienda de Puerto Rico respecto a unos ingresos del Sr. Usera Laseda que no se hicieron figurar en los libros. La evidencia testifical y documental aportada por ambas partes es verdaderamente copiosa. De la misma surgió el conflicto de si en realidad existió un solo contrato de servicios o de si por el contrario existieron dos. La corte inferior, que era la llamada a dirimir dicho conflicto, actuó acertadamente a nuestro juicio al resolver que se trataba de dos contratos dis-

tintos y que la suma de $2,500 pagada por los demandados al demandante sólo cubría lo servicios por éste prestados por razón del primer contrato. Por otra parte, nada hay en los autos que nos demuestre que al así dirimir el conflicto dicha corte cometiera manifiesto error o actuara movida por pasión, prejuicio o parcialidad. *Machuca* v. *Autoridad de Fuentes Fluviales*, 66 D.P.R. 182 y *Rivera* v. *López*, 66 D.P.R. 210. Siendo ello así, debemos respetar su conclusión a este respecto. Los errores uno y dos no han sido, por tanto, cometidos.

▮▮ Por los servicios prestados por el demandante con motivo del segundo contrato la corte inferior concedió a éste la suma de $15,914.71, o sea el 15 por ciento del monto de la rebaja en las deficiencias notificadas a los demandados en 13 de julio de 1944.([1]) Éstos han apelado contra la sentencia dictada y ahora toca a este Tribunal determinar si la cantidad antes mencionada representa o no el valor razonable de tales servicios.

Si se examinan las referidas notificaciones y los anexos acompañados a éstas se verá que las mismas comprenden la suma de $14,000 por la venta de acciones de la American Telegraph and Telephone Company, la de $12,000 por la venta de acciones de la Fajardo Sugar Company, y la de $140,000 por un supuesto aumento de capital para el año 1935. También incluyen esas deficiencias la partida de $19,562.41 reclamada como deducible por venta de 1,500 acciones del Banco Comercial de Puerto Rico.

Todas esas partidas constaban claramente en las notificaciones de deficiencias y sus anexos, y al demandante—quien en 29 de marzo de 1944 rindió un informe a los demandados después de haber practicado el *audit* de los libros de la sucesión, objeto del primer contrato de servicios—debió serle fácil recopilar los datos necesarios para controvertirlas. De-

---

([1])Los $26,524.53 reclamados por el demandante equivalen al 25 por ciento de $106,098.10, que fué la suma rebajada de las deficiencias notificadas por el Tesorero.

cimos esto teniendo en mente el contexto del propio informe rendido en 29 de marzo por el demandante, del cual se desprende con claridad meridiana que él tenía conocimiento de la venta de las 650 acciones de la American Telegraph and Telephone Company y de la venta de las 225 acciones de la Fajardo Sugar Company y de que las mismas produjeron un beneficio neto de $26,000 al causante de los demandados. Asimismo se desprende de dicho informe que para el año 1935 se había reclamado una deducción en planilla de $19,562.41 por pérdida en la venta de 1,500 acciones del Banco Comercial de Puerto Rico. La única partida de la cual posiblemente el demandante no tenía conocimiento al entregársele las notificaciones de deficiencias tal vez era la de $140,000. Sin embargo, la prueba demuestra que a él no le fué difícil determinar que esa suma global correspondía a un arrendamiento e hipoteca de $60,000 a favor de la Central Aguirre Sugar Co. y a otra hipoteca a favor de don Vicente Usera Laseda por $80,000, en la cual eran deudores el Sr. Lucas Pérez Valdivieso Torruella y su esposa. Decimos esto tomando en consideración no sólo el examen de los libros que bajo el primer contrato de servicios ya había practicado el demandante—esas partidas constan repetidamente en algunos de los folios de los libros de contabilidad de la sucesión demandada que fueron presentados como *exhibits*—sino también las escrituras públicas que fueron igualmente ofrecidas en evidencia (Véanse Exh. 17D del Dte.—Escritura Núm. 155 de Hipoteca Voluntaria, otorgada en Ponce, el 29 de septiembre de 1925; Exh. 17F del Dte.—Escritura de Cancelación de Hipoteca, Núm. 84, otorgada en Ponce en 29 de junio de 1927; Exh. 17G del Dte.—Escritura de Carta de Pago, Núm. 122, otorgada en Ponce a 6 de septiembre de 1927 y Exh. 29 del Dte.—Escritura de Arrendamiento, Préstamo y Rescisión de Subarrendamiento, Núm. 23, otorgada en Ponce, en 10 de abril de 1924) y que fueron suministradas al demandante por los demandados.

Además de determinar la prueba necesaria para refutar las deficiencias notificadas a los demandados, la labor del demandante en relación con este segundo contrato de servicios se limitó a la celebración de varias entrevistas; a dirigir ciertas cartas a los demandados; a solicitar del Departamento de Hacienda, Negociado de Contribuciones sobre Ingresos, la reconsideración de las deficiencias y una vista administrativa; y a asistir a la misma en 1 de septiembre de 1944. A juzgar por el récord taquigráfico de dicha vista ella no duró mucho—posiblemente de una a dos horas y en ella estuvo presente también el Lic. Raúl Matos en representación de los demandados—y si bien es cierto que la misma resultó fructuosa para los demandados, no creemos que en un caso como éste los honorarios del demandante deban fijarse a base de un tanto por ciento de las sumas en que dichas deficiencias fueron rebajadas.

Tomando en consideración lo antes dicho, creemos que el valor de los honorarios profesionales del demandante en relación con los servicios por él prestados por razón del contrato objeto de la demanda debe rebajarse de $15,914.71, concedidos por la corte inferior, a la suma de $1,000.

■ Ahora bien, apreciado el hecho de que hemos llegado a la conclusión de que se trataba de dos contratos de servicios separados e independientes, no creemos que la corte inferior cometiera error al condenar a los demandados al pago de costas y honorarios de abogado—la temeridad de dichos demandados al negarse a pagar cantidad alguna al demandante por estos servicios adicionales es clara—ni al fijar dichos honorarios de abogado en $1,000. Esa suma en nuestra opinión, es razonable dado el hecho de que la vista de este caso duró varios días y de que en el curso de la misma se discutieron innumerables cuestiones de derecho.

*Debe modificarse la sentencia apelada en el sentido de rebajar la cuantía a concederse al demandante a la cantidad de $1,000, y así modificada, confirmarse.*