JORGE R. COLLAZO y su esposa FLOR DE MARÍA QUIÑONES DE COLLAZO, demandantes y apelados, *v.* JULIO M. CONESA RENOVALES y su esposa GLADYS BRAUN, demandados y apelantes.

Núm. 9940.—*Sometido:* Junio 2, 1949. *Resuelto:* Junio 24, 1949.

*Guillermo S. Pierluisi,* abogado de los apelantes; *Raúl Matos,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

La cláusula quinta de la escritura de arrendamiento otorgada el 14 de marzo de 1945 por Julio M. Conesa Renovales y su esposa Gladys Braun, de una parte, a favor de los esposos Jorge R. Collazo y Flor de María Quiñones de Collazo, de la otra, textualmente copiada reza así:

"Se conviene expresamente entre las partes que mientras esté en vigor el presente contrato de arrendamiento, los arrendatarios tendrán derecho de adquirir las propiedades arrendadas por un valor de ocho mil quinientos dólares (casa y solares). Es asimismo convenido que los arrendadores asegurarán contra incendio el edificio que enclava en la finca letra 'A', por una suma razonable y si la prima del seguro, por la naturaleza del negocio que está establecido en el mismo fuese mayor a la corriente, la diferencia que exista será satisfecha por los arrendatarios. En caso de que los arrendadores tuvieren el propósito de vender las propiedades arrendadas a otra persona por una suma mayor de ocho mil quinientos dólares fijada anteriormente, en la forma expuesta, deberán notificar previamente por escrito, mediante carta certificada a los arrendatarios, la oferta que se les hiciere, viniendo obligados los arrendatarios a decidir si compran o no las propiedades arrendadas por la referida suma de ocho mil quinientos dólares en la forma consignada, en el término de treinta días, a partir de la fecha en que reciban dicha notificación, cuya decisión deberán hacerla constar, mediante carta certificada dirigida al propietario. En caso de transcurridos los referidos treinta días para aceptar la proposición de venta de ocho mil quinientos dólares, en la forma expuesta, sin que los arrendatarios así lo hicieren, en ese caso quedará en libertad el propietario y/o arrendadores a consumar la venta de las fincas arrendadas por el precio que convenga con la persona que haya hecho tal oferta."

Fundados en esa cláusula, Collazo y esposa radicaron ante la Corte de Distrito de Ponce una demanda en que, luego de describir los inmuebles objeto del contrato de arrenda-

miento,(¹) y de copiar íntegramente la cláusula quinta a que ya hemos hecho referencia, alegan que no obstante lo convenido y de haber ellos requerido a los demandados en reiteradas ocasiones para que les otorguen la correspondiente escritura de compraventa de los inmuebles descritos, por el convenido precio de $8,500, y a pesar de haber estado ellos dispuestos a satisfacer en seguida la aludida cantidad a los demandados, todas sus gestiones han resultado infructuosas.

Los demandados contestaron negando algunos hechos y planteando cuestiones de derecho y ciertas defensas especiales. Celebrado el juicio de rigor, la corte inferior dictó sentencia declarando con lugar la demanda en su totalidad y ordenando a los demandados, de conformidad con la súplica de la misma, que otorguen la correspondiente escritura de compraventa en favor de los demandantes dentro del término de cinco días, por el precio de $8,500, libre de toda carga o gravamen; y que si los demandados no lo hacen así el márshal lo haría a nombre de ellos, con costas más la suma de $1,000 en concepto de honorarios de abogado.

Nueve errores imputan en apelación los demandados a la corte inferior, siendo los dos primeros que ésta erró al declarar sin lugar la defensa de que la demanda no aduce hechos constitutivos de causa de acción y al considerar que la alegada promesa de venta no careció de consideración o precio. No existen tales errores. Conforme está redactada la demanda, ella aduce claramente una causa de acción en favor de los demandantes y en contra de los demandados. Surge de ella de manera terminante que en el contrato de arrendamiento otorgado por los demandados en favor de los demandantes, aquéllos hicieron a éstos una promesa de vender las propiedades objeto del mismo, y que éstos aceptaron

(¹)Las propiedades se describen en la escritura bajo las letras A y B. La finca que figura bajo la letra A consiste en un solar con casa de mampostería, ladrillo y piedra, de una sola planta, techada de hierro galvanizado. La descrita bajo la letra B consiste de un solar de 140.213 metros cuadrados.

la promesa de venta y están en condiciones de efectuar el contrato, negándose a ello los demandados.

Según el artículo 1340 del Código Civil, ed. de 1930, "La promesa de vender o comprar, habiendo conformidad en la cosa y en el precio, dará derecho a los contratantes para reclamar recíprocamente el cumplimiento del contrato." Tal promesa de vender existe de manera palmaria, al igual que la conformidad de las partes en cuanto a la cosa y en cuanto al precio. Bajo estas condiciones y a tenor con el artículo citado, una vez aceptada la promesa, los contratantes podían reclamarse recíprocamente el cumplimiento del contrato. Arguye, sin embargo, la parte demandada que el contrato no es exigible porque el mismo carece de causa. En el presente caso el contrato de arrendamiento mismo constituye una buena y suficiente causa para la existencia del contrato de promesa de venta. Además, la promesa de vender contenida en la cláusula quinta del contrato no es otra cosa que una opción concedida por los arrendadores a los arrendatarios. Ossorio y Gallardo define este contrato así:

"Es un contrato por virtud del cual el propietario de una cosa o derecho concede a otra persona por tiempo fijo y en determinadas condiciones la facultad exclusiva de adquirirlo o de transferirlo a un tercero." (Enciclopedia Jurídica Española por Francisco Seix, Tomo 26, pág. 41.)

Bajo el Código Civil el contrato de opción es enteramente válido y exigible. A este respecto el ilustre tratadista José María Manresa y Navarro, en sus Comentarios al Código Civil Español, Tomo X, cuarta edición, 1931, pág. 61, interpretando el artículo 1451 del Código Civil Español, que en su contexto es idéntico al artículo 1340 del nuestro, se expresa del siguiente modo:

"Desde luego se observa que la promesa puede ser unilateral o bilateral. La unilateral a su vez se distingue en dos: promesa de venta y promesa de compra. La bilateral, es claro que es recíproca, esto es, de compra y de venta.

"*a*) *Promesa unilateral.*—Esta promesa puede ser aceptada o no aceptada.

"La promesa unilateral no aceptada, ya sea de compra, ya de venta, no produce efectos jurídicos apreciables de ninguna especie: éste es el caso de la llamada *policitación*. No es a él, ciertamente, al que se refiere el artículo 1451 del Código.

"En la promesa unilateral aceptada, sea de compra o sea de venta, es donde nacen ya efectos jurídicos. Un individuo $A$ promete vender a otro $B$ una finca por tal precio; $B$ acepta la promesa. Éste es el caso de la promesa de venta aceptada. ¿Quiénes quedan, obligados y a qué, desde el momento en que la promesa se acepta? . . . ¿Qué es, en efecto, lo que ha aceptado $B$ en el ejemplo propuesto? La contestación es clara: $B$ ha aceptado la promesa, no el hecho de la venta con todas sus consecuencias. $A$ se ha constituído voluntariamente en la obligación de vender a $B$, si éste compra; $B$ ha aceptado esta obligación; $A$ era dueño de prometer o de no prometer, pero prometió y su promesa transcendió a otra persona determinada, la cual aceptó. La relación jurídica obligatoria queda establecida, siendo $B$ el sujeto pretensor y $A$ el sujeto obligado. . . . Éste y no otro es, a nuestro juicio, el verdadero contenido de la promesa unilateral de venta simplemente aceptada.

"A primera vista puede tal vez parecer anómalo el que la efectividad de la compra y venta, a que se refiere la promesa, quede al arbitrio de una sola de las partes; pero, observando el proceso generador de esta situación jurídica, nada hay en él que contradiga los principios fundamentales de la contratación, por haberse desenvuelto dentro del ambiente de la más amplia libertad individual. Cuando el acto pase de la categoría de promesa a la de verdadera compra y venta por haberse decidido por comprar aquél a quien la promesa se hizo, entonces en modo alguno podrá decirse que la efectividad del contrato queda al arbitrio de una de las partes, y claro está que a ese momento es al que hay que referirse para ver si existe o no el vicio que algunos pretenden encontrar en el criterio que mantenemos.''

La Enciclopedia Jurídica Española en el tomo y página citados, refiriéndose al artículo 1451 del Código Civil Español se expresa así:

"Aquí la promesa está legalmente reconocida como un verdadero contrato con substantividad propia; sujeto, como luego expresa el

Código, a las disposiciones generales que regulan las obligaciones y contratos. Tal contrato podrá tener por objeto el compromiso unilateral de comprar o de vender, quedando la otra parte libre para poder decidirse; como también podrá contener un compromiso recíproco o bilateral de compra y venta; siendo en todos los casos necesaria la aceptación del compromiso para que la promesa pueda tener el alcance de un verdadero contrato.

"Dentro de las especialidades de este contrato, cabe el compromiso de venta muy usado entre los mineros y conocido con el nombre de contrato de opción."

■ Bajo el tercer error alegan los demandados que la corte de distrito erró al declarar con lugar la demanda, no obstante haberse probado que los demandantes violaron la obligación de respetar a los demandados en su derecho a construir una segunda planta. En la cláusula sexta de la escritura de arrendamiento hicieron constar las partes que los arrendadores tendrían derecho a reparar, reconstruir y efectuar ampliaciones, así como a construir una planta alta en la propiedad descrita bajo la letra A, siempre que dichos actos no afectaran ni perjudicaran en forma alguna el negocio de lavandería que tenían establecido los arrendatarios en dicha propiedad; y que cuando los arrendadores decidieran llevar a cabo dichos actos se pondrían de acuerdo con los arrendatarios para determinar la forma en que tales obras debían llevarse a cabo. Sobre este aspecto del caso ambas partes ofrecieron prueba y la corte, al apreciar la misma, llegó a la conclusión de que como según los términos del contrato para que los demandados pudieran construir la segunda planta en la propiedad arrendada era menester que las partes se pusieran de acuerdo y se obtuviera previamente el permiso de los arrendatarios, y la prueba no demostraba la existencia de tal acuerdo o consentimiento, la contención de los demandados a ese respecto debía ser desestimada. El estudio que hemos hecho del caso nos convence de que existe suficiente prueba en los autos para justificar la conclusión a que llegó la corte inferior a este respecto.

162

■ El cuarto error señalado es que la corte erró al no considerar en su sentencia que las partes desistieron de su supuesta opción por actos posteriores al contrato, no resolviendo dicho asunto en un sentido u otro. La sentencia dictada lógicamente demuestra que la corte inferior no creyó que las partes hubieran desistido de su contrato de opción. De haber opinado tal cosa no hubiera dictado sentencia en la forma en que lo hizo.

■■ Los errores quinto y sexto son en síntesis que la corte de distrito erró al declarar sin lugar la sexta defensa planteada por ellos, o sea, que los demandantes en ningún momento demostraron estar en condiciones de cumplir con los términos de la opción, no teniendo aún para la fecha del juicio a su disposición la suma de $8,500, no habiendo hecho ofrecimiento de pago de esa suma a los demandados, ni habiéndola consignado en corte. En la acción civil que se ejercita se solicita se ordene el cumplimiento específico de un contrato de promesa de venta y el otorgamiento de la correspondiente escritura. Semejante acción es de carácter personal. *Calderón* v. *Registrador*, 46 D.P.R. 778; *Lange* v. *Honoré*, 47 D.P.R. 218, 222. Para el ejercicio de acciones personales de esa naturaleza la oferta de pago y la consignación en corte de la suma envuelta en el contrato no son requisitos previos a la radicación de la demanda. Por disposición expresa del artículo 1340 del Código Civil el contrato de promesa de venta da derecho a los contratantes a exigir recíprocamente el cumplimiento del contrato. Refiriéndose a las obligaciones recíprocas el artículo 1077 del mismo cuerpo legal provee que en esa clase de obligaciones "el perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, . . . ". En el presente caso los demandantes optaron por exigir el cumplimiento. Nada hay en la ley que disponga, repetimos, que para exigir tal cumplimiento sea necesario que se haga un ofrecimiento (*tender*) o se deposite previamente en corte el precio a ser pagado

por la cosa que sirve de objeto a la demanda. Basta que la parte demandante acepte la promesa de venta y que esté dispuesta y en condiciones de cumplir con el contrato. Las alegaciones y la prueba revelan que los demandantes no sólo requirieron verbalmente y por escrito a ambos demandados para que dieran cumplimiento a lo pactado, sino que aquéllos tenían concertado con el Banco de Ponce un préstamo con el cual pagarían las propiedades envueltas en el pleito tan pronto como la escritura de venta les fuese otorgada. Por tanto, ellos alegaron y probaron no sólo que estaban dispuestos a cumplir con los términos del contrato, si que también en condiciones económicas de hacer frente al mismo.(²)

██ No fué un error de la corte inferior no considerar la prueba oral aducida(³) para variar los términos del contrato escrito.(⁴) El artículo 25 de la Ley de Evidencia (artículo 387) del Código de Enjuiciamiento Civil) provee:

"Cuando las condiciones de un convenio se hayan consignado por las partes en un documento, se considerará que contiene éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento, excepto en los siguientes casos:

"1. Cuando una equivocación o imperfección en el documento fuere alegada en el litigio.

"2. Cuando la validez del convenio constituyere el hecho controvertido.

"Pero este artículo no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, según lo definido en el artículo veinte y ocho, o para explicar

---

(²)El caso de *United States* v. *Penn Foundry and Manufacturing Company, Inc.*, resuelto por el Tribunal Supremo de Estados Unidos el 31 de mayo de 1949, 337 U.S. 198, expone claramente la regla del Derecho Común sobre la materia.

(³)La prueba oral tendiente a variar los términos de la escritura fué admitida condicionalmente por la corte. En su opinión ésta hace constar que la misma no era admisible, pero que si lo hubiese sido ella no le merecía crédito.

(⁴)La contención de los demandados es que en la cláusula quinta de la escritura ellos tan sólo dieron a los demandantes una preferencia, en caso de que decidieran vender a un tercero, mas nunca una opción.

164

una ambigüedad extrínseca, o probar ilegalidad o fraude. La palabra 'convenio' incluye escrituras y testamentos, así como contratos entre las partes.''

El principio establecido por el artículo 25, supra, es harto conocido. En derecho americano se le describe con el nombre de *parol evidence rule*. La teoría en que se basa no es meramente que el documento constituye la mejor evidencia de lo acordado, sino que su contenido representa el verdadero contrato entre las partes, no siendo admisible prueba oral para variarlo excepto en los casos provistos en el citado artículo. *Nicorelli* v. *Ernesto López & Cía.*, 26 D.P.R. 55; *Morales* v. *Díaz*, 24 D.P.R. 739. Véanse también 6 Harv.L. Rev. 325; 7 Cal.L.Rev. 417; 6 Cal.Jur., pág. 261, sec. 166; 10 Cal.Jur. 919, sec. 187; 12 Am.Jur. 755–757, secs. 232–234; y 20 Am. Jur. 958, sec. 1099. La prueba ofrecida por los demandados no caía dentro de ninguna de las excepciones establecidas por el artículo arriba copiado y la corte a quo no cometió error al desechar la misma.

También insisten los demandados en que fué un error de la corte ordenar que ellos liberaran el inmueble de todo género de gravámenes. Tampoco se cometió este error. En la escritura de arrendamiento no se hace constar en forma alguna que al ejercitar el derecho de opción los arrendatarios tendrían que pagar en adición a la suma de $8,500 cualesquiera cargas o gravámenes que pesaran sobre las fincas arrendadas, más las contribuciones que se adeudaren.(⁵) La lógica indica que dados los términos en que está concebida la promesa de venta, la suma de $8,500 sería pagada por las propiedades libres de toda clase de cargas.

El noveno y último error imputado por los demandados a la corte inferior es que ésta erró al conceder a los

---

(⁵)En la nota puesta por el Registrador de la Propiedad al calce de la escritura de arrendamiento se hace constar que se deniega la inscripción por no estar las fincas inscritas, sino anotadas, y que dichas fincas se hallan gravadas con una mención de hipoteca por $2,400 a favor de Milagros Fournier Toro vda. de Wellenkamp. Cf. *Mejía* v. *Mouriño*, 68 D.P.R. 661, 663, y *Sánchez* v. *Coll*, 69 D.P.R. 925.

demandantes la suma de $1,000 por concepto de honorarios de abogado, sin demostrarse que ellos fueran culpables de temeridad. La concesión de honorarios es discrecional en la corte inferior y no estamos convencidos de que en este caso se abusara de tal discreción al concederlos ni al fijarlos en la suma indicada. *Figueroa* v. *Picó,* 69 D.P.R. 401; *Sánchez* v. *Cooperativa Azucarera,* 66 D.P.R. 346. Véase también *Gorbea* v. *Santiago,* 67 D.P.R. 634.

*Debe confirmarse la sentencia apelada.*