DAVID MEDINA, LIBERTAD G. DE PANTOJAS, GABINO PADILLA y OTROS, querellantes y recurrentes, *v.* PUERTO RICO TELEPHONE COMPANY, querellada y recurrida; GRECIA MALLENS DE LÓPEZ, GENARITA MERCADO, ÁUREA MARÍA TORRES y OTROS, querellantes y recurrentes, *v.* PUERTO RICO TELEPHONE CO., querellada y recurrida.

*Número:* R-64-109 *Resuelto:* 6 de diciembre de 1968

*Luis G. Estades,* abogado de los recurrentes; *McConnell, Valdés, Kelley & Sifre* y *Baltazar Corrada,* abogados de la recurrida.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Debemos dictaminar en este caso sobre la extensión y significado de la concesión de "23 días calendarios de vacaciones anualmente con paga completa" incluida en los convenios colectivos celebrados entre las partes litigantes. Los recurrentes arguyen que quiere decir paga completa por cada uno de dichos días mientras que la recurrida sostiene que ha venido pagando, correctamente, con la aceptación y sin objeción de la Unión, por concepto de tales vacaciones, la paga por cada uno de los días laborables incluidos entre 23 los días calendarios del período de vacaciones. A nuestro juicio, el juez de instancia concluyó correctamente que la querellada, al así pagar, actuó de acuerdo con los términos de los convenios en cuestión.

Los recurrentes radicaron querella en contra de la recurrida alegando que durante los diez años anteriores a agosto de 1958 la recurrida se ha negado a pagar a los recurrentes

la totalidad de los 23 días de vacaciones con paga completa provista en los convenios en vigor. El récord demuestra que la reclamación asciende a unos $350,000 más una suma igual por concepto de *penalidad*.

De acuerdo con las determinaciones de hecho del tribunal de instancia

"1. El primer Convenio Colectivo celebrado entre la querellada y la Unión de Trabajadores de la Industria del Teléfono fue en el año 1943. Por el Artículo IX de dicho convenio se dispuso que:

'Todos los empleados de la compañía que haya tenido un año de servicio, tendrían derecho a quince días de licencia anualmente con paga completa.'

La querellada en armonía con la anterior cláusula le concedía a los empleados quince días calendarios de vacaciones durante los cuales le pagaba su paga completa, correspondiente a los días regulares de trabajo comprendidos dentro de los quince (15) días. Es decir, la compañía le había estado dando una licencia anual de 15 días con paga igual que la que el empleado hubiese percibido de haber estado trabajando normalmente durante el período calendario de 15 días. La Unión que representaba a los empleados no impugnó esta interpretación.

2. Para el año 1945 se negoció otro convenio concediéndose 18 y 21 días de vacaciones, según los años de servicio. Por el Artículo IX se dispone que:

'Todos los empleados de la compañía que hayan tenido más de un año de servicio y menos de diez años tendrán de aquí en adelante, mientras sean empleados de la compañía, derecho a diez y ocho días calendarios de licencia anualmente con paga completa y los empleados con más de diez (10) años de servicio continuo tendrán de aquí en adelante y mientras sean empleados de la compañía derecho a veintiún días calendarios de licencia anualmente con paga completa.'

La compañía interpretó esta cláusula pagando a los empleados como si hubieran estado trabajando regularmente durante el período de vacaciones y no por cada uno de los días calendarios que duraran las vacaciones.

La Unión no objetó la interpretación que le dio la querellada a esta cláusula.

3. Para el año 1946 se negoció un nuevo Convenio Colectivo aumentando a 23 días las vacaciones. Se dispuso en el Artículo IX del Convenio que:

'Todos los empleados de la Compañía que hayan tenido más de un año de servicio tendrán derecho, a partir del primer año de servicio, a veintitrés (23) días calendarios de licencia anualmente con paga completa, mientras sean empleados de la compañía.'

Es decir, que mediante este convenio se aumentaron las vacaciones a 23 días calendarios. Esta cláusula quedó en vigor sin modificación en los convenios colectivos de los años 1948, 1950, 1952, 1954, 1956 y 1959, y es la interpretación a la misma lo que ha originado las acciones ejercitadas, ya que en el caso de Medina y otros la reclamación cubre los años 1948–1958 y el de Grecia Mallens y otros los años 1950–1960.

Al igual que lo hizo con los anteriores convenios la querellada interpretó dicha cláusula al efecto de que los 23 días calendarios anualmente con paga significaba que los empleados tendrían sus vacaciones durante 23 días calendarios y que devengarían su paga completa igual que si hubieran estado trabajando durante los días regulares comprendidos dentro de dicho período. Esta interpretación de la querellada tampoco fue objetada por la Unión ni se llevó queja alguna al Comité de Ajuste."

Además concluyó el tribunal de instancia que:

". . . antes de aprobarse el Convenio Colectivo del año 1946, se llevaron a efecto negociaciones entre la Unión representante de los obreros y la querellada. Con el comienzo de las negociaciones la Unión sometió a la querellada un proyecto de Convenio Colectivo en cuyo proyecto reclamaban 21 días laborables, proyecto que no fue aceptado por la querellada.

. . . ¿Si la querellada no aceptó los 21 días laborables que eran más de 23 días calendarios, cómo es posible que pueda establecerse que el aceptar 23 días calendarios estaban aceptando 23 días laborables, o sea, 2 días más que los reclamados por los empleados? La respuesta no se hace esperar . . . Según el testimonio del Sr. José Domínguez, entonces Vice Presidente y Gerente General de la querellada y quien la representó en las negociaciones que culminaron en la aprobación de los Convenios Colectivos, 17 días laborables puede que sean 23 días calen-

darios o más, y se optó por no poner 17 días laborables y sí 23 calendarios, ya que si hubiera un día feriado dentro de los 17 días laborables, este aumentaría los días calendarios. Además la querellada optó por días calendarios porque así se venía haciendo desde el año 1945 y nunca fue objetado a pesar de haber tenido amplia oportunidad para objetarlo los empleados o la Unión y no hubo querella alguna ante el Comité de Ajuste, ni nunca se solicitó modificación o aclaración de esa cláusula. Tampoco se acudió a la Junta Local o Nacional de Relaciones del Trabajo para querellarse de que la querellada no estuviera cumpliendo con dicha cláusula o que se le estuviera dando una interpretación que les perjudicaba.

La querellada durante todo el transcurso de sus negociaciones de Convenios Colectivos con la Unión que representaba los querellantes interpretó siempre que la cláusula de 23 días calendarios de licencia anualmente con paga completa significaba que los empleados tomarían sus vacaciones durante 23 días calendarios y que devengarían su paga completa igual que si hubieran estado trabajando durante los días regulares comprendidos dentro de dicho período, que según los convenios Colectivos durante el transcurso de los 10 años cubiertos por las reclamaciones de los casos de epígrafe, la semana regular de trabajo en la empresa de la querellada era de 5 días con 8 horas diarias. Esa fue la interpretación que le dio la querellada desde el año 1946 a 1959, sin que se cuestionara ante el Comité de Ajuste dicha interpretación."

En vista de lo expuesto dictaminó el tribunal de instancia que:

"En [sic] nuestro criterio, que las partes lo que tuvieron en mente al redactar los Convenios Colectivos fue al [sic] conceder 23 días calendarios equivalentes a los días laborables cubiertos en dicho período.

El Tribunal resuelve como cuestión de derecho que al pactar las partes en los Convenios Colectivos, para los años 1946, 1948, 1950, 1952, 1954, 1956 y 1959, que los empleados de la compañía que hayan tenido más de un año de servicio tendrán 'derecho, a partir del primer año de servicio, a veintitrés (23) días calendarios de licencia anualmente en paga completa, mientras sean empleados de la compañía', la compañía venía obligada a pagar a los querellantes la misma paga que se ganaría

el empleado de estar trabajando durante el período de duración de los mismos. Es decir, que siendo la semana regular de trabajo de cinco días, la querellada venía obligada a pagar durante las vacaciones el salario correspondiente a diecisiete días de trabajo de 8 horas diarias."

El tribunal de instancia declaró sin lugar las querellas en estos casos.

Los cinco apuntamientos de los querellantes en este recurso fueron en realidad dos, a saber:

(1) Que no procedía la admisión de prueba oral a los fines de interpretar la cláusula de vacaciones de los convenios en cuestión; y

(2) El tribunal de instancia incidió al apreciar la prueba sobre la verdadera intención de las partes al resolver que la cláusula de vacaciones en dichos convenios significa que las vacaciones durarían 23 días calendarios y que paga completa significa la paga normal o regular que dichos empleados recibirían de haber estado trabajando durante dicho período, o sea, por los días laborables establecidos por el patrono y no alterado por los convenios que resultaban incluidos en dicho período de 23 días calendarios.

1.—En apoyo del primer apuntamiento invocan los querellantes el Art. 25 de la Ley de Evidencia([1]) (32 L.P.R.A. sec. 1668) y nuestras decisiones en *Luce & Co.* v. *Junta Rel. Trabajo*, 86 D.P.R. 425 (1962) ; *París* v. *Canety*, 73 D.P.R.

---

([1])El Art. 25 de la Ley de Evidencia lee así:

"Cuando las condiciones de un convenio se hayan consignado por las partes en un documento, se considerará que contiene éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento, excepto en los siguientes casos:

1.—Cuando una equivocación o imperfección en el documento fuere alegada en el litigio.

2.—Cuando la validez del convenio constituyere el hecho controvertido.

Pero esta sección no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, según lo definido en la sec. 1671 de este título, o para explicar una ambigüedad extrínseca, o probar ilegalidad o fraude. La palabra 'convenio' incluye escrituras y testamentos, así como contratos entre las partes."

403 (1952); y *Collazo* v. *Conesa*, 70 D.P.R. 155 (1949),
y otros casos citados en *Luce & Co.*, supra.

■ La referida disposición de nuestra Ley de Evidencia
no excluye evidencia de circunstancias bajo las cuales fueron
hechos los convenios en cuestión o para explicar una ambi-
güedad. Por otra parte el Art. 28 de la Ley de Evidencia
(32 L.P.R.A. sec. 1671), dispone que para la debida inter-
pretación de un documento, las circunstancias bajo las cuales
fuese otorgado incluso la situación del objeto a que se con-
trayere así como de las partes podrán también demostrarse
a fin de que el juez se coloque en la situación de las personas
cuyo lenguaje estuviere llamado a interpretar. Además, el
Art. 1234 del Código Civil (31 L.P.R.A. sec. 3472) dispone
que "para juzgar de la intención de los contratantes debe-
rán atenderse principalmente a los actos de éstos, coetáneos
y posteriores al contrato."

De acuerdo con la relación del caso y conclusiones del
tribunal de instancia, los litigantes estipularon que:

"(a) La querellada interpreta la cláusula de vacaciones de
los Convenios Colectivos para los años cubiertos por las res-
pectivas reclamaciones en el sentido de que viene obligada a
pagar a los querellantes la misma paga que se ganaría el em-
pleado de estar trabajando durante el período de 23 días de
duración de las mismas. La semana regular de trabajo es de
cinco (5) días de trabajo y cada día se compone de ocho (8)
horas regulares. La querellada le paga a los querellantes durante
las vacaciones el salario correspondiente a diecisiete (17) días
de ocho (8) horas que equivale al salario que éstos recibirían
si estuvieran trabajando regularmente durante la duración de
las vacaciones.

(b) La contención de los querellantes es que la cláusula
de vacaciones de los referidos Convenios Colectivos debe inter-
pretarse en el sentido de que la querellada viene obligada a
pagar cada uno de los veintitrés (23) días que duran las vaca-
ciones como si hubieran trabajado durante cada uno de los dichos
días.

A petición de la parte querellada y con la oposición de la parte querellante, el Tribunal en armonía con las disposiciones del Artículo 25 de la Ley de Evidencia y para establecer cuál fue la verdadera transacción o convenio entre las partes al consignar en los Convenios Colectivos la concesión anualmente de 'veintitrés (23) días calendarios de licencia con paga completa', resolvió oir prueba, habiendo anunciado la parte querellante que no presentaría prueba directa descansando en los Convenios Colectivos pero reservándose el derecho a presentar prueba de refutación, lo que hizo en su turno."

De manera que los propios recurrentes, en virtud de tal estipulación, en efecto admitieron que la referida cláusula de vacaciones era ambigua y no clara y que se había prestado a interpretaciones conflictivas y que la controversia exigía una interpretación de la misma. Tanto en *Luce & Co.*, supra, como en *París*, supra, y *Collazo*, supra, la disposición del convenio o contrato en controversia era clara e indubitable y por lo tanto había que atenerse al sentido literal de la misma. En el caso que nos ocupa, las partes en efecto consignaron lo contrario. En derecho la situación creada por la práctica seguida por las partes bajo los convenios en discusión, reflejada en la referida estipulación era que existía una "ambigüedad extrínseca en los convenios; que para dilucidar la controversia había que interpretar la cláusula de vacaciones y que había que juzgar cuál fue la intención de las partes." Por lo tanto, era necesario pasar prueba, como se hizo, de las circunstancias bajo las cuales se otorgaron los distintos convenios, de la situación de las partes, de los actos de éstas coetáneos o posteriores a los referidos convenios y del propósito de las partes al otorgarlos, en relación con la disposición sobre vacaciones provista en dichos convenios. *Rossy* v. *Tribunal Superior*, 80 D.P.R. 729, 748–749 (1958); *Sucn. Marrero* v. *Santiago*, 74 D.P.R. 816, 821 (1953); *Caballero* v. *Kogan*, 73 D.P.R. 666 (1952); *Ramírez* v. *Ramírez*, 65 D.P.R. 544, 548 (1946); *Nicorelli* v.

*Ernesto López y Compañía,* 26 D.P.R. 55, 58 (1917) ; *Hoffman* v. *Cuadrado,* 14 D.P.R. 590 (1908) ; *Sentencia del Tribunal Supremo de España* de 20 de abril de 1944; Manresa, *Comentarios al Código Civil Español,* 5ta. ed., T. 8, Vol. II, págs. 493–519.

Por lo tanto concluimos que el tribunal de instancia no incidió al admitir, considerar y apreciar tal prueba.

■ 2.—Las conclusiones de hecho del tribunal de instancia están justificadas ya que hubo prueba de que:

(a) En convenio de 1943 se convino un período de vacaciones de 15 días con paga completa. La compañía sólo pagaba los días laborables dentro de ese período—no hubo objeción. Es más, uno de los asesores de la Unión infirió que esto se debía a que los trabajadores tenían los sábados y domingos libres sin paga.

La minuta de la reunión del Comité de Ajuste creada por el convenio para dirimir las disputas que surgieran bajo el mismo, celebrada en 26 de octubre de 1944 informa que "El Comité de Ajuste discutió el asunto de vacaciones al personal y todos estuvieron de acuerdo en que la forma en que se están llevando a cabo es satisfactoria." De manera que en esta forma se consagró entre las partes la práctica de la compañía de sólo pagar los días laborables dentro del período de vacaciones convenido.

(b) En el convenio de 1945 se convinieron 18 días calendarios de vacaciones con paga completa para los empleados de más de un año y menos de diez años de servicio y 21 días calendarios con paga completa para los de más de 10 años de servicio. La compañía continuó su práctica de sólo pagar los días laborables incluidos dentro de los días calendarios. El Comité de Ajuste, en su reunión de 28 de marzo de 1946, convino unánimemente "que cuando un empleado se va de vacaciones y desea el pago por adelantado de las mismas, que se le adelante el *cheque regular* de la quincena",

lo que quería decir la paga correspondiente a los días laborables en la quincena. (Énfasis nuestro.)

Según el testimonio de los ejecutivos de la compañía ésta nunca recibió protesta de la Unión por tal forma de pago de las vacaciones ni fue el asunto llevado al Comité de Ajuste ni a la Junta de Relaciones del Trabajo. Empleados de la compañía que anteriormente representaron a la Unión en las negociaciones de los convenios, testificaron que ellos interpretaron esta cláusula del convenio en armonía con la forma de pago del patrono y así lo explicaron en la asamblea de la Unión reunida para considerar dicho convenio que luego ratificó dicha asamblea; que en las negociaciones los representantes de la Unión trataban de conseguir que el período de vacaciones fuese de días laborables pero siempre hubo que aceptarlo a base de días calendarios; que nunca se llevó el asunto al Comité de Ajuste ni a la Junta de Relaciones del Trabajo.

(c) Para el convenio de 1946 la Unión solicitó 21 días laborables de vacaciones. Así lo incluyó en su proyecto de convenio. Pero la cláusula finalmente adoptada proveyó para 23 días calendarios con paga completa aunque la Unión trató de obtener 23 días laborables. Durante la negociación de este convenio la Unión no cuestionó la forma de pago de vacaciones establecida por la compañía bajo el convenio vigente la que limitaba el pago a los 17 días laborables dentro de los 23 días calendarios de vacaciones, ni trató de aclarar la situación, excepto en el extremo de tratar de conseguir 21 días laborables y más tarde 23 días laborables. Era razonable concluir que si la compañía se negó a aceptar un período de vacaciones de 21 días laborables menos iba a aceptar pagar por cada uno de los 23 días calendarios pues esto significaba que habría de pagar por dos días más de los que previamente objetó. Además, el pagar por los sábados y domingos dentro del período de vacaciones significaba que el empleado en vacaciones recibiría una remuneración mayor que cuando tra-

bajase pues en este último caso no recibía paga por los sábados y domingos.

Los testigos de los querellantes negaron que al convenir establecer el período de vacaciones en 23 días calendarios el pago se limitase a los días laborables y negaron que esto se explicase así en la asamblea de la Unión. Uno de los asesores de la Unión testificó que al ser consultado sobre dicha forma de pago, aconsejó que se llevase al Comité de Ajuste pero no sabía si se hizo. Añadió que no se trató de aclarar al negociar el próximo convenio "por entender [el comité de negociación de la Unión] que había un recurso para reclamar de la empresa el cumplimiento de la misma [la cláusula de vacaciones] sin quebrantar las relaciones entre la Unión y la empresa." El otro asesor de la Unión testificó que cuando surgió la disputa, él aconsejó que el asunto se discutiese directamente con la compañía y no a través del Comité de Ajuste y que "de no convenirse con la compañía, se abriera a negociación colectiva en el próximo convenio con la compañía para hacer las aclaraciones . . . . Además, indiqué que siempre tenían el derecho de ir al tribunal y sustanciar su reclamación en el tribunal." Admitió, sin embargo, que a pesar de saber de la discrepancia en cuanto a la forma de pago de las vacaciones, no se trató de aclarar la misma en la negociación de los convenios siguientes porque "En la mesa del convenio colectivo seguía siendo claro para nosotros que las palabras días calendarios eran días consecutivos, y con decir días calendarios meramente y no poner días laborables pero no eliminando sábados, domingos y días feriados. Como usted lo puede ver, ellos convinieron con eso, si no se ponen a discutir en cuanto a la paga de esos días que no están pagando, que siempre pagarán porque la compañía está equivocada en esa interpretación, y los compañeros así lo interpretamos." Este asesor explicó cómo se llegó a convenir que el período de vacaciones fuese 23 días calendarios.

A esos efectos testificó que en la negociación del convenio de 1944–1945 la Unión pedía 30 días laborables de vacaciones. La compañía objetó pues no le era conveniente, por lo costoso, el tener un empleado fuera el equivalente de unos 40 días calendarios; por eso se transó por 18 y 21 días calendarios con paga completa que incluía los sábados y domingos; que "Veintitrés días calendarios con paga es más ventajoso para la compañía que veintiuno laborables con paga, porque aquí se habla de veintiuno laborables con paga. El obrero está ausente de la compañía veintiocho días posiblemente, o sea, contando los veintiuno sábados y domingos, tiene que ir añadiendo, el obrero está ausente veintiséis o veintiocho días. Eso quiere decir que si la compañía necesita que se haga ese trabajo tenía que pagar a otro y le sale más caro tener que pagarle veintiún días a otro y pagarle a él. Por eso lo estoy haciendo más claro. Si la compañía conviene veintitrés días calendarios, el obrero va a estar solamente veintitrés días. Eso es más barato, pagar dos días más para tener el obrero ausente veintitrés días, que tener que pagar eso al otro. Si yo estoy ausente veintiuno con paga laborables, ocho días sin paga."

Concluimos que el tribunal de instancia no incidió al no darle crédito al testimonio de los testigos de los recurrentes, máxime cuando sus dos testigos principales, sus asesores legales, admitieron haber tenido conocimiento de la controversia y uno aconsejó que ésta se planteara ante el Comité de Ajuste y el otro que se discutiese directamente con la recurrida. El Comité de Ajuste aparentemente no encontró objetable la práctica de la recurrida de sólo pagar los días laborables dentro de los días calendarios del término de vacaciones. Las gestiones para que la compañía pagase por cada uno de los días calendarios fueron realizadas directamente con ella y en ocasión de la negociación del convenio para el término 1946–47, pero resultaron infructuosas.

*En vista de lo expuesto, se confirmará la sentencia dictada por el tribunal de instancia en este caso.*

