ALFONSO MORALES, demandante y apelante, *v.* ZOILO ÁLVAREZ, demandado y apelado.

Núm. 8796.—*Sometido:* Enero 17, 1944. *Resuelto:* Marzo 6, 1944.

*H. Ramos Mimoso,* abogado del apelante; *G. Rivera Cestero,* abogado del apelado.

El Juez Asociado Señor de Jesús emitió la opinión del tribunal.

La sentencia recurrida fué dictada a base de una excepción previa de insuficiencia de hechos constitutivos de causa de acción. Para determinar si la sentencia dirimió correctamente la controversia, precisa que hagamos una exposición de las alegaciones esenciales de las dos causas de acción expuestas en la demanda.

Como primera causa de acción se alega que allá por el mes de febrero 1940, en el pueblo del Dorado, el demandado requirió los servicios del demandante para que le gestionara la venta de una finca rústica propiedad del primero por precio no menor de diecisiete mil dólares, conviniéndose que en caso de efectuarse la operación el demandante, en compensación de sus servicios, recibiría todo el mobiliario que existía en una casa radicada en la misma finca, mobiliario que el demandado, según el demandante, valoró en ochocientos dólares, y en adición recibiría el demandante una cantidad en dinero que se determinaría por ambas partes posteriormente; que el demandante verificó las gestiones correspondientes, logrando que la finca fuese vendida a Julio Morales por la cantidad de dieciocho mil dólares; y que el valor razonable de los servicios del demandante incluyendo el valor convenido del mobiliario, es de $925, que el demandado se niega a pagar.

La segunda causa de acción consiste en que el demandante convino con el demandado en gestionarle la venta de una partida de ganado que tenía el segundo en la finca mencionada, obligándose el demandado a compensar los servicios del demandente mediante el pago de una suma razonable de acuerdo con el precio que se obtuviera por el ganado; que el demandante practicó las gestiones pertinentes y como consecuencia de ellas el ganado fué vendido a Félix Alvarez por la suma de mil cuatrocientos dólares; y que el valor razonable de los servicios del demandante por la venta del ganado asciende a cien dólares, cantidad que no le ha sido satis-

fecha a pesar de los requerimientos que con ese fin ha practicado el demandante.

Termina la demanda suplicando sentencia por la cantidad total de mil veinticinco dólares, importe de las dos causas de acción, con intereses legales desde la interposición de la demanda y las costas, incluyendo honorarios de abogado.

Resolviendo las excepciones previas interpuestas por el demandado, declaró la corte inferior que como parte del precio de los servicios consistió en la entrega del mobiliario, la acción que debió ejercitar el demandante era la de incumplimiento de contrato y no la de cobro de servicios, que fué la que pretendió ejercitar el demandante. Agregó la corte inferior que aun considerando las acciones ejercitadas como de arrendamiento de servicios, la demanda no aducía hechos en ninguna de sus dos causas de acción: (a) porque no se alega el elemento esencial de ese contrato, es decir, el *precio cierto* de los servicios, y (b) que en caso de no haberse fijado dicho precio, deberá alegarse que el mismo está establecido por los usos y costumbres del lugar donde se prestaron los servicios, y en tal caso el demandante venía obligado a alegar que se dedicaba a prestar esos servicios usual y frecuentemente.

 El contrato de arrendamiento de servicios, de conformidad con el artículo 1434 del Código Civil (ed. 1930), es aquel en virtud del cual una de las partes se obliga a prestar a la otra un servicio *por precio cierto*. Excepto cuando se trate de un contrato de trabajo celebrado con un obrero,[1] no es indispensable para su validez que el precio se pague en dinero o signo que lo represente. Puede el pago hacerse en especie, en dinero, o en dinero y especie, según lo convengan las partes. Es verdad que el Código de las Siete Partidas exigía como elementos integrantes del contrato de arrendamiento de servicios no sólo que fuese el precio cierto, si que

---

[1] Sección 1 de la Ley de Contratos de Trabajo, Apéndice al Código Civil (ed. 1930), pág. 420.

se pagase en "dineros contados," agregando: "Ca si otra cosa recibiese, que non fuessen dineros contados, non sería loguero, mas sería contracto innominato: assí como diximos en la postrimera ley del título de los cambios." (Ley 1ª del Tít. 8º de la Partida 5ª.) Pero el Código Civil, si bien adoptó la Ley de Partidas en lo que al elemento del precio cierto respecta, no hizo lo mismo con el requisito del pago en dinero o signo que lo represente.

Empero, para que el contrato de servicios cumpla con el requisito del *precio cierto,* no es indispensable fijar de antemano su importe, pues el precio cierto existe a los efectos del artículo 1434 no sólo cuando está pactado expresamente, sino también cuando dicho precio es conocido por la costumbre y uso frecuente en el lugar en que tales servicios se prestaron.[2] Sentencia del Tribunal Supremo de España de 18 de octubre de 1899, 88 Jur. Civ. 105. Estudiando el elemento del *precio cierto* en este contrato, dice Scaevola:

"Precio *cierto* en la modalidad locativa que estudiamos es sinónimo de precio *predeterminado,* precio *determinado* y precio *determinable,* porque en cualquiera de estas tres formas, siempre que consensualmente coexista con la prestación personal, o la obra a ejecutar, podremos afirmar la presencia de un contrato de arrendamiento perfecto.

" . . . . . . . .

"Dijimos antes que la certeza del precio en el arrendamiento de servicios podía traer su origen, o de su predeterminación oficial (v. gr.: arancel), o del mismo contrato, si en él se estipuló cantidad precisa, o un tanto por unidad (de medida o tiempo), o de la costumbre del lugar mediante apreciación *a posteriori.* Al primero le hemos llamado precio predeterminado, al segundo determinado y al tercero determinable. Cualquiera de estas tres variedades constituye sin ningún género de duda precio cierto." Scaevola, Código Civil, tomo 24 (parte primera), págs. 430 y 435.

---

[2] En lo que respecta al contrato de arrendamiento de servicios profesionales, prescribe el artículo 1473 del Código Civil que se estará para su remuneración a lo convenido entre las partes; mas cuando no hubiere convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte, ante cualquier corte de jurisdicción competente, *el importe razonable de dichos servicios.*

Aplicando el criterio enunciado por Scaevola, no cabe duda que de la faz de la demanda aparece en parte la existencia del *precio cierto* que exige la ley, y que es determinado en lo que respecta al mobiliario y determinable en cuanto al resto del precio, ya que fácilmente puede establecerse su valor por los usos y costumbres del lugar en que los servicios se prestaron. Ello no obstante, la demanda carece de alegaciones esenciales para que aduzca hechos suficientes en sus dos causas de acción. En lo que al mobiliario respecta, es claro que el demandante debió reclamar el mobiliario mismo, ya que eso fué lo pactado entre las partes, no pudiendo el demandante sustituirlo por su valor razonable sin que de la faz de la demanda aparezca razón legal alguna para tal sustitución. En cuanto al resto del precio, el determinable, no tratándose en este caso de *servicios profesionales,* no puede reclamarse el *valor razonable* de dichos servicios como hace el demandante, sino que debe alegarse el establecido por los usos y costumbres del lugar en que dichos servicios se prestaron. No es necesario alegar, como sostuvo la corte inferior, que el demandante "se dedicaba a prestar esos servicios usual y frecuentemente." Esa alegación sólo es necesaria en la acción establecida por un mandatario en cobro de sus servicios cuando no se pactó compensación, a fin de controvertir la presunción de gratuito que conlleva el mandato de conformidad con el artículo 1602 del Código Civil. Pero en el presente caso el demandado en ningún momento confirió su representación al demandante, y por consiguiente no existió entre ellos la relación de mandante y mandatario.

Los casos de *García* v. *Cañada,* 11 D.P.R. 421; *Agosto* v. *Woods,* 13 D.P.R. 369, y *Ledesma* v. *Araujo,* 15 D.P.R. 249, 254, no sostienen la conclusión a que llegó la corte inferior al efecto de que la demanda no era susceptible de enmienda. Los casos de *García* v. *Cañada,* supra, y *Agosto* v. *Woods,* supra, fueron vistos en sus méritos y en las respectivas demandas no se alegó el preciso de acuerdo con los usos y costumbres, limitándose los demandantes a reclamar los que ellos

creían era el valor razonable de los servicios. Habiéndose visto los casos en sus méritos sin que se intentase siquiera probar el precio de acuerdo con los usos y costumbres, la corte dictó sentencia declarando sin lugar la demanda, no habiéndose suscitado en dichos casos la cuestión de si la demanda era o no enmendable.

En el caso de *Ledesma* v. *Araujo,* supra, la demanda alegó la existencia de un contrato de mandato, pero como el demandante no probó que el demandado se obligase a pagarle sus servicios ni probó tampoco que el demandante tuviese por ocupación el desempeño de los servicios a que se refiere el supuesto mandato, la demanda fué desestimada por presumirse gratuito el mandato, como queda anteriormente indicado.

Por último, el caso de *Ex parte Capó* y *Rivera,* 59 D.P.R. 899, 903, también invocado por la corte inferior, tampoco se aplicaba porque de conformidad con las alegaciones de la contestación radicada en aquel caso, en ningún momento se convino en pagar remuneración alguna por los servicios del demandante, declarándolo así probado la corte inferior, y habiéndolo así admitido el propio demandante; pero en el supuesto de que sin convenirlo expresamente las partes hubieren actuado en el entendido de que dichos servicios no habían de ser gratuitos, la demanda no alegó el precio de ellos de acuerdo con los usos y costumbres del lugar donde se prestaron.

■ No podemos convenir, sin embargo, en que la demanda no es susceptible de enmienda. El demandante sin duda puede enmendarla guiándose por los principios enunciados en esta opinión, y como la sentencia no fué dictada a petición del demandante, sino que la corte la dictó de su propia iniciativa, sin darle una oportunidad de enmendarla por estimar que no era susceptible de enmienda, *procede revocar la sentencia apelada y devolver el caso a la corte inferior con instrucciones de conceder al demandante un término razonable para enmendar la demanda.*