EMILIO ÁLVAREZ, demandante, apelado y apelante, *v.* RAFAELA Y ÁNGEL EURÍPIDES MANZANO, demandados, apelantes y apelados.

Núm. 9267.—*Sometido:* Marzo 6, 1946. *Resuelto:* Junio 28, 1946.

*Enrique Báez García,* abogado de los apelantes apelados; *Ángel Rivera Colón,* abogado del apelado y apelante.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Este es un pleito sobre cumplimiento de contrato instituído por Emilio Alvarez contra los únicos y universales he-

rederos de su esposa, Angel Eurípides y Rafaela Manzano. Cuando Alvarez contrajo matrimonio con Aurelia Manzano aportó ella una finca rústica de 25.58 cuerdas descrita en la demanda, en la cual existían cinco casas. La finca se hallaba afecta a una hipoteca a favor del Federal Land Bank of Baltimore. Durante el matrimonio construyeron en el mismo terreno cuatro casas, las cuales pertenecen a la sociedad de gananciales. Existiendo desavenencias entre Alvarez y los dos herederos de su esposa, a instancia del primero, la corte inferior decretó la administración judicial de todos los bienes de la herencia. Señalada la vista de un incidente de la administración judicial para el 30 de junio de 1944, Alvarez y los dos herederos se encontraron en la corte inferior y habiéndose sugerido la posibilidad de que las partes pudiesen llegar a un acuerdo respecto a la división del caudal, solicitaron la suspensión de la vista y las partes, asistidas de sus respectivos abogados, se reunieron en la sala de sesiones, llegando a un convenio que formalizaron en el siguiente documento:

"DOCUMENTO DE TRANSACCIÓN

"SÉPASE POR EL PRESENTE DOCUMENTO, QUE NOSOTROS: DE UNA PARTE: Los hermanos Doña Rafaela y don Ángel Eurípides Manzano, ambos mayores de edad, casados, de oficios domésticos ella, agricultor él y vecinos de Mayagüez y Ciales respectivamente.

"Y DE LA OTRA PARTE: Don Emilio Alvarez, mayor de edad, viudo, comerciante y vecino de San Juan, P. R.

"CONTRATAMOS HACIENDO CONSTAR LO SIGUIENTE:

"1. Que con el fin de dar término a la Administración Judicial pendiente ante esta Corte de Distrito de Arecibo, Puerto Rico, promovida por don Emilio Alvarez, bajo el caso Civil número 4725, las partes han llegado a un acuerdo amistoso, el cual consiste en lo siguiente:

"(a) Los comparecientes doña Rafaela y don Ángel Eurípides Manzano, se obligan vender a favor de don Emilio Alvarez y éste se compromete a comprar, sus participaciones que les corresponde en los bienes dejados por la finada doña Aurelia Manzano, hermana de los primeros y esposa que fué del segundo compareciente, con-

sistente dichos bienes en una finca rústica radicada en el barrio Jaguas de Ciales, compuesta de veinticinco cuerdas más o menos, y conteniendo varias casas-viviendas, de las cuales algunas de las casas o sean 5, son de carácter privativo y 4 casas, son de carácter gananciales entre la finada doña Aurelia Manzano y don Emilio Alvarez.

"(b) A los efectos de la venta se valora la finca con todas sus casas en la cantidad de catorce mil dólares ($14,000).

"(c) Las casas de carácter gananciales, que son cuatro, se valoran en la cantidad de cuatro mil quinientos dólares ($4,500).

"(d) En el inventario del caso de Administración Judicial figuran como bienes muebles un automóvil marca 'Packard', muebles en Río Piedras y muebles en Ciales, y las partes. acuerdan que todos correspondan al señor Don Emilio Alvarez, pero en cambio éste deberá renunciar a la cuota de usufructo legal como viudo.

"(e) Antes de procederse al otorgamiento de la escritura de compraventa se arreglará previamente una reclamación que tiene pendiente el Lcdo. Camuñas en la Sucesión por servicios profesionales prestados, y al efecto el señor Alvarez puede retener una cantidad en su poder para atender al pago de dicha deuda.

"(f) Las deudas según inventario practicado por los comparecientes ascienden a la suma de mil seiscientos diez y siete dólares ochenta centavos ($1,617.80), más o menos y de ésta los hermanos de apellido Manzano deberán pagar la mitad y la otra mitad le corresponde al señor Alvarez, y en igual proporción se comprometen a atender al pago de cualquier otra deuda que aparezca.

"(g) El señor Alvarez pagó la suma de ciento cuarenta dólares ($140), por concepto de deuda de los muebles de Río Piedras, de cuya suma los hermanos Manzano deberán pagar la mitad.

"(h) Desde septiembre del año 1942, las casas de carácter gananciales han venido rentando a razón de cuarenta y dos dólares ($42) mensuales de cuyas rentas el señor Alvarez tendrá derecho a percibir la mitad.

"Y para que así conste, lo firman las partes de común acuerdo en Arecibo, Puerto Rico, hoy día 30 de junio de 1944.

"(Fdo.) Emilio Alvarez

"(Fdo.) Rafaela Manzano

"(Fdo.) Ángel E. Manzano

"Testigos: (Fdo.) José Febo.   (Fdo.) Evaristo Ortiz."

Como además del crédito hipotecario del Federal Land Bank of Baltimore habían algunas deudas de la herencia

cuyas cantidades exactas ignoraban las partes en aquella fecha, se fijó el 6 de julio siguiente para reunirse en la oficina del abogado del demandante en Ciales con el propósito de determinar dichas deudas, las cuales, de acuerdo con el contrato, debían pagarse de por mitad por el demandante y los demandados. Una vez determinado el importe de estas cuentas, se procedería a firmar la correspondiente escritura. La reunión se celebró el 20 de julio, haciéndose entonces la siguiente liquidación:

| | |
|---|---:|
| Deudas aceptadas en el documento | $1, 617. 80 |
| Deuda aceptada por pago de muebles | 140. 00 |
| Deuda de Ramón Fernández | 90. 00 |
| Deuda de Maximino Fernández | 70. 75 |
| Deuda por concepto de agua al Municipio de Ciales | 7.80 |
| | $1, 926. 37 |

Se determinó, además, que el crédito hipotecario del Federal Land Bank of Baltimore montaba a $1,164.24. Aunque se fijó el montante de las deudas, no se firmó la escritura por divergencia en la interpretación del contrato. Alegaban los demandados que las cuatro casas de la sociedad de gananciales no estaban incluídas en el precio de $14,000, que "a los efectos de la venta" se fijó a la finca con *todas* sus casas y pretendían que a dicha cantidad se sumasen $2,250 que era el valor que tenía la participación de los demandados en las cuatro casas de la sociedad de gananciales. El demandante a su vez exigió que el montante del crédito hipotecario del Federal Land Bank of Baltimore en su totalidad fuese deducido de los $14,000. En tales circunstancias, no se consumó la transacción y algún tiempo después Alvarez instó este pleito de cumplimiento de contrato.

La sentencia que declaró con lugar la demanda, en su parte dispositiva, decretó:

"Por lo tanto habiéndose valorado la finca con todas sus casas en la cantidad de catorce mil dólares ($14,000) hay que deducir de dicha cantidad las siguientes partidas:

Mitad de las deudas ascendentes a $1,926.37_____ $963.18
Mitad de la hipoteca debida al Banco Federal_____ 582.12
Mitad del valor de las casas gananciales_____ 2,250.00
Mitad de la renta de las casas gananciales hasta el día
30 de abril de 1945 ascendente a un total de $1,344____ 672.00

que hace un total de cuatro mil cuatrocientos sesenta y siete dólares treinta centavos_____ $4,467.30.

Corresponde por tanto a los demandados percibir como pago total por la finca que se describe en la demanda y las casas contenidas en ella tanto gananciales como privativas, la cantidad de nueve mil quinientos treinta y dos dólares, setenta centavos ($9,532.70); además el demandante y los demandados deberán depositar en la secretaría de esta corte, para satisfacer en su día los honorarios corespondientes al Lcdo. Camuñas, (párrafo 'e' del contrato) la cantidad de quinientos dólares ($500) o sea doscientos cincuenta dólares ($250) cada parte.

"Por tanto, la Corte dicta sentencia declarando con lugar la demanda y en su consecuencia ordena que el demandante deposite en la secretaría de esta Corte en el término de 15 días a contar desde la fecha en que esta sentencia sea firme, la cantidad de nueve mil quinientos treinta y dos dólares, setenta centavos ($9,532.70), disponiéndose que los demandados una vez depositada por el demandante la suma anteriormente dicha, deben proceder a otorgar la correspondiente escritura de traspaso de la finca de 25 cuerdas, 58 céntimos descrita en la demanda, a favor del demandante, comprendiendo en dicha venta todas las casas contenidas en ella; y en caso de que no lo efectúen los demandados, que se proceda por el Márshal de esta Corte a otorgar la correspondiente escritura de traspaso de dicha finca a favor del demandante.

"Y también dispone que el demandante y los demandados depositen en la secretaría de esta corte quinientos dólares ($500) o sea doscientos cincuenta dólares ($250) cada parte para los honorarios correspondientes al Lcdo. José Camuñas de Río Piedras por los servicios prestados a la sucesión de Aurelia Manzano Padró, imponiéndose las costas a los demandados y $150 para honorarios del abogado del demandante".

Ambas partes apelaron. Los demandados, de la totalidad de la sentencia. El demandante, del pronunciamiento que

dispuso que se dedujese del precio de venta la mitad del crédito hipotecario, o sea $582.12 y no su totalidad.

■ Como hemos visto, esa deuda no se mencionó expresamente en el contrato de transacción, ni en aquel momento se conocía su montante exacto; pero es un hecho que tanto el demandante como los demandados conocían la existencia de la deuda cuando firmaron el contrato. El demandante, algo remiso al principio, pero francamente después, y su testigo José Febo, declararon que aunque el crédito no se mencionó en el contrato, los demandados oralmente convinieron con el demandante que se deduciría en su totalidad. La corte inferior parece no haber dado crédito a estos testigos en cuanto a este particular, pues decretó que sólo dedujese la mitad. Somos de opinión que ese pronunciamiento no es erróneo, pues esa era una deuda de la herencia, y aunque no se mencionase expresamente en el contrato, claramente quedó cubierta por la cláusula (f) de dicho contrato dispositiva de que cualquier deuda que apareciere debería pagarse de por mitad por las partes.

Pasemos ahora a considerar el recurso de los demandados.

■■ La primera contención de los demandados es que el contrato suscrito el 30 de junio fué una mera tentativa de transacción, sujeta a que en una reunión que posteriormente debía celebrarse en Ciales las partes llegaran a un acuerdo sobre ciertas partidas que no habían sido determinadas en el contrato, y que al celebrarse la reunión las partes no pudieron llegar a un acuerdo.

El contrato no fué una mera tentativa de transacción. En el documento se valoró la finca rústica con todas sus casas, a los efectos de la venta, en $14,000, quedando así incluídas en ese precio las cuatro casas pertenecientes a la sociedad de gananciales. Pero como en esas cuatro casas el demandante tenía una participación igual a la mitad de su valor, y como es de presumir que él no compraba a los de-

mandados nada más que el interés que éstos tenían en las casas, se fijó su valor total en $4,500, debiendo por consiguiente deducirse de los $14,000 la cantidad de $2,250 que era el interés que en dichas casas tenía el comprador. Se convino en que ciertos bienes muebles existentes en Río Piedras y Ciales, respectivamente, a pesar de pertenecer a la sociedad de gananciales, se adjudicarían al demandante, quien a su vez se obligó a renunciar al usufructo vidual a que tenía derecho. Se hizo un inventario de las deudas de la herencia, las cuales ascendieron a $1,617.80, estipulándose que de esa suma el demandante pagaría la mitad y la otra mitad correspondía a los demandados, estableciéndose la misma norma para cualquier otra deuda que apareciera. Se acordó también que antes de procederse al otorgamiento de la escritura se arreglaría una reclamación pendiente que tenía el abogado Camuñas y se autorizó al Sr. Alvarez para retener una cantidad en su poder para atender al pago de la deuda. También se declaró que el Sr. Alvarez había pagado $140 a cuenta de los muebles que habían en Río Piedras y que de dicha suma los demandados deberían pagar la mitad. Por último, se aclaró en que desde septiembre de 1942 las casas de carácter ganancial habían venido produciendo rentas a razón de $42 mensuales, y que de esas rentas el demandante tenía derecho a percibir la mitad.

El hecho de que al momento de firmarse el contrato no se supiese exactamente el montante de algunas deudas, tales como la del Banco Federal por concepto del crédito hipotecario, y lo adeudado en el comercio de Ciales por concepto de madera y otros materiales de construcción, no implica que el contrato fuese incierto como alegan los demandados, y que por consiguiente no procediese la acción de cumplimiento de contrato, pues una simple operación aritmética establecería la cantidad exacta que debía pagar el demandante. Es verdad que en aquella ocasión no se precisó exactamente el precio que, luego de deducida la mitad del importe de las cuen-

tas pendientes, había de pagar el comprador, pero se establecieron las normas para determinarlo, con lo cual se cumplía el requisito del precio cierto exigido por el art. 1334 del Código Civil. Véase, por analogía, *Morales* v. *Alvarez,* 63 D.P.R. 208, 211.

El contrato quedó perfeccionado en Arecibo el 30 de junio de 1944, cuando las dos partes, vendedores y comprador, llegaron a un acuerdo respecto al precio y a la cosa. Lo que las partes pospusieron para llevar a cabo en Ciales fué la consumación del contrato, y no pudiéndose verificar. la consumación entonces, la exigió el demandante a través de este pleito de cumplimiento de contrato.

Arguyen los demandados que erró la corte inferior al declarar con lugar la demanda porque el referido documento no fué aprobado por la corte. Sostienen que era necesaria esa aprobación por hallarse los bienes sujetos a una administración judicial.

Tal aprobación no era necesaria, pues todas las personas interesadas en la herencia, es decir, el demandante y los demandados, son mayores de edad. Véase por analogía el art. 604 del Código de Enjuiciamiento Civil. Una vez puestas de acuerdo las partes, o firme ya la sentencia decretando el cumplimiento del contrato y otorgada la correspondiente escritura, bastaría solicitar de la corte que diese por terminada la administración judicial y ordenase al administrador que hiciese entrega de los bienes al comprador.

Sostienen los demandados que la corte inferior actuó sin jurisdicción en este caso al aprobar la división de bienes de la herencia de Aurelia Manzano sin exigir el correspondiente recibo acreditativo del pago de la contribución de herencia.

Esta contención de los demandados está predicada en lo dispuesto en la sección 12 de la Ley núm. 99 aprobada el 29 de agosto de 1925 (Leyes de 1925, pág. 791), según fué en-

mendada por la Ley núm. 20, aprobada el 27 de abril de 1933 (Leyes de 1932–33, pág. 233).([1])

Sin duda que, a través del contrato cuyo cumplimiento decretó la corte, se llevó a cabo la división de la herencia de Aurelia Manzano. Pero siendo todos los herederos mayores de edad, la división de la herencia no necesitaba la aprobación judicial, de conformidad con el art. 604 del Código de Enjuiciamiento Civil. Por consiguiente, la sección 12 no privó de jurisdicción a la corte para dictar la sentencia en este caso. No es que las partes en este caso puedan burlar lo prescrito en la citada sección 12, pues al proceder al otorgamiento de la escritura, que de acuerdo con la sentencia tenía que otorgarse, el notario, en cumplimiento de la citada sección 12, no autorizaría la referida escritura, a menos que se le presentase el recibo del pago de la contribución de herencia. El Registrador, a su vez, de acuerdo con la misma sección 12, no inscribiría la escritura sin que también se le acreditase el pago de la contribución de herencia.

■■ Por último, se quejan los demandados de que la corte inferior les impuso el pago de las costas y honorarios de abogado.

---

([1])Dicha sección, según fué enmendada, dice así:

"Excepto en los casos especiales, según se determina en el artículo 5a de esta Ley, ningún tribunal aprobará la división o distribución de los bienes de ningún fallecido, ni permitirá la liquidación final de las cuentas de ningún albacea, administrador, fideicomisario o persona que administre cualesquiera bienes, a menos de haberse presentado y exhiban el recibo o los recibos especiales, según lo dispuesto en el artículo 11 de esta Ley; y ningún notario expedirá, autorizará o certificará instrumento alguno de sentencia, división, o distribución, enajenación o hipoteca de bienes, a menos de haberse presentado dicho recibo o recibos, expedidos por el Tesorero; y ningún registrador inscribirá en ningún registro a su cargo, instrumento alguno ni fallo, sentencia o auto judicial autorizado, dictado o emitido en relación con la división, distribución o entrega de dichos bienes, a menos de haberse presentado el recibo o recibos expedidos por el Tesorero; y las personas que infrinjan las prescripciones de este artículo serán responsables por todas las contribuciones no satisfechas, a causa de dicha infracción pagando además el interés, según se dispone en el artículo 9 de esta Ley, o incurrirán en un delito menos grave que se castigará con multa que no será menos de cien (100) a mil (1,000) dólares o cárcel por tres meses a un año, o ambas penas a discreción del tribunal."

En cuanto a la condena de costas, repetidas veces hemos resuelto que su imposición a la parte contra quien se dicte la sentencia es imperativa por mandato expreso de la ley. En cuanto a la condena de honorarios concierne, su imposición es discrecional en la corte sentenciadora, considerada la temeridad, grado de culpa en el litigio y el trabajo necesariamente prestado por el abogado de la otra parte. No vemos motivo que justifique la revocación de ese pronunciamiento.

*Procede la confirmación de la sentencia.*