MARÍA CABALLERO VIUDA DE BESOSA, HARRY M. BESOSA, NYDIA M. BESOSA y HOWARD M. BESOSA, demandantes y apelados, *v.* SAUL KOGAN, demandado y apelante.

Núm. 10544.—*Sometido:* Junio 4, 1952. *Resuelto:* Agosto 18, 1952.

*Juan Enrique Géigel, Guillermo Silva* y *Luis F. Cuyar,* abogados del apelante; *F. Fernández Cuyar,* abogado de los apelados.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Se trata de un pleito de cumplimiento específico de un contrato en el cual, según los demandantes, el demandado se obligó a comprar dos fincas pertenecientes a los primeros. Celebrado el juicio en los méritos, el tribunal de distrito dictó sentencia a favor de los demandantes, contra la cual el demandado ha interpuesto recurso de apelación.

██ ██ La controversia surgió de un documento que dice así:

"OPCION DE COMPRAVENTA DE FINCAS.

"En la ciudad de San Juan, Isla de Puerto Rico, a los cuatro (4) días del mes de enero de 1949,

"Comparecen

"De la Primera Parte: Don Harry M. Besosa, quien es mayor de 21 años de edad, casado con doña Margaret Nance, de profesión Abogado y vecino del barrio Hato Rey, término municipal de Río Piedras, quien concurre en este instrumento público en representación de la Sucesión de don Harry F. Besosa, compuesta por doña María Caballero y de sus herederos e hijos Harry M. Besosa, Nydia M. Besosa y Howard M. Besosa.

"Y de la Segunda Parte: Don Saul Kogan, quien es mayor de 21 años de edad, casado con doña Aida Huberman, comerciante y vecino del barrio de Santurce de esta ciudad.

"Los comparecientes manifiestan haber convenido el otorgamiento de un contrato de opción de compraventa de fincas rústicas, el cual llevan a efecto por medio de este instrumento y previa la siguiente relación de hechos:

"1.—Don Harry M. Besosa expresa que la Sucesión de don Harry F. Besosa es dueña en pleno dominio de dos fincas rústicas situadas en el Barrio Beatriz, sitio conocido por Las Cruces, en la Carretera Insular Núm. Uno, término municipal de Cayey,

las cuales tienen una cabida aproximada de 42 cuerdas y 8 cuerdas y colindan entre sí. En la finca de mayor cabida enclavan las siguientes edificaciones: Dos casas pequeñas de maderas, techadas una de cartón y otra con zinc, destinadas a vivienda; una tercera casa de vivienda, con base de concreto y techo de zinc; un garaje triple de maderas techado de zinc; una casa de peón, de maderas, techada de zinc; un rancho grande todo de zinc y un establo techado de zinc. Dichas construcciones tienen su sistema de acueducto que proviene de un manantial en la finca halado por fuerza y bomba eléctrica.

"2.—Declara el compareciente de la primera parte que de la finca de 42 cuerdas descrita en el apartado anterior se ha hecho una segregación física de una parcela de aproximadamente tres cuerdas con ochenta y siete centésimas de otra, al extremo Noroeste de dicha finca, segregación que hizo el causante, don Harry F. Besosa, quien regaló dicha parcela a su hijo don Howard M. Besosa. Aclara el compareciente de la primera parte que no se ha otorgado hasta el presente documento legal alguno para formalizar la referida segregación y que, por consiguiente no hay constancia alguna de dicha segregación en el Registro de la Propiedad de Guayama.

"3.—La finca de mayor cabida arriba mencionada tiene una hipoteca con el Federal Land Bank of Baltimore quedando en la actualidad un balance deudor de dicha hipoteca de aproximadamente mil cien dólares ($1,100), que además existen ocupando pequeños cuadros de terreno en las citadas fincas dos personas que tienen dos casitas de su propiedad sin título y por permiso gracioso del causante. Que además una de las casas y que es la que existe al extremo Este de dicha finca, conocida por la casa de Howard, actualmente tiene un contrato de arrendamiento sujeto a terminación y desocupación en un período de noventa días desde que se venda dicha finca, y la que está ocupada por el señor Harry Keller.

"4.—Expresan los comparecientes de la primera y la segunda parte que la Sucesión de don Harry F. Besosa, por medio de su representante legal el aquí compareciente don Harry M. Besosa, ha convenido con el compareciente de la segunda parte don Saul Kogan, la compraventa de las dos fincas rústicas antes descritas, con todas las edificaciones y mejoras que las mismas contienen, pero después de deducir de la finca de mayor cabida la parcela físicamente segregada y cedida a don Howard M. Besosa. Manifiestan los comparecientes que están convenidos

ya todos los términos y condiciones del referido contrato de compraventa, pero por no haberse tramitado aún la testamentaría de los bienes relictos al fallecimiento de don Harry F. Besosa, la Sucesión de éste, no se halla en condiciones de proceder a formalizar en definitiva el contrato de compraventa acordado, y siendo el deseo de la compareciente de la segunda parte tomar posesión inmediatamente de las propiedades cuya compraventa se ha convenido, las partes comparecientes han decidido formalizar ahora este contrato de opción de compraventa bajo las siguientes cláusulas:

"Primera: La Sucesión de don Harry F. Besosa, por la presente se compromete y obliga a vender al compareciente de la segunda parte las dos fincas rústicas antes descritas en este instrumento con todas sus edificaciones y mejoras, luego de deducida la parcela de 3.87 cuerdas que se ha segregado físicamente de la finca de mayor cabida, y a ceder y traspasar dichas propiedades libres por completo de toda clase de cargas y gravámenes.

"Segunda: La venta de las referidas propiedades se hará mediante el pago del precio convenido de veinte mil dólares ($20,000) que será satisfecho en dinero efectivo en el momento de otorgarse la escritura de compraventa.

"Tercera: El compareciente de la segunda parte se compromete y obliga a comprar las propiedades mencionadas en las cláusulas primera que precede por el precio indicado en la segunda cláusula.

"Cuarta: Las partes procederán al otorgamiento de la escritura de compraventa y al cumplimiento de las respectivas obligaciones que ambas han contraído en el presente instrumento dentro del término de noventa días (90) a partir de esta fecha.

"Quinta: El compareciente de la segunda parte entrega al compareciente de la primera parte en el acto del otorgamiento de este instrumento como causa y en consideración a la opción que se le concede por el mismo, la suma de mil dólares ($1,000), en dinero efectivo de Estados Unidos de América, por cuya suma el compareciente de la primera parte otorga recibo al Sr. Kogan. Queda entendido y convenido que la referida suma de mil dólares ($1,000) se acreditará al compareciente de la segunda parte como parte del precio total de veinte mil dólares ($20,000), que deberá pagar él cuando se efectúe el otorgamiento de la escritura de compraventa, y que, si dicho compa-

reciente de la segunda parte dejare de cumplir la obligación contraída por él de comprar las fincas por el precio y demás condiciones antes consignadas, la referida cantidad de mil dólares ($1,000) será retenida por la Sucesión de don Harry F. Besosa en concepto de indemnización por tal incumplimiento y en concepto de indemnización por el uso de la finca durante el período que transcurra entre esta fecha y tal incumplimiento.

"Sexta: El compareciente de la segunda parte tomará posesión inmediatamente de las propiedades objeto de esta opción, quedando convenido, sin embargo, que el actual inquilino Sr. Keller, podrá continuar ocupando la casa que habita hasta la fecha en que se otorgue la escritura de compraventa y que el canon que paga por la ocupación de dicha casa corresponderá desde este momento al compareciente de la segunda parte.

"Séptima: El compareciente de la segunda parte vendrá obligado a restituir la posesión de las propiedades antes mencionadas a la Sucesión de don Harry F. Besosa si por cualquier circunstancia dicho compareciente dejare de cumplir la obligación de compra contraída por él mediante el otorgamiento de esta opción.

"Octava: El compareciente de la segunda parte conviene en comprar las propiedades antes mencionadas sin imponer obligación alguna a la Sucesión de don Harry F. Besosa de remover o sacar de dicha finca las dos personas antes nombradas que ocupan pequeños lotes en la misma, y sin imponer a la vendedora obligación alguna de indemnizar al comprador por la presencia o permanencia en la finca de dichos intrusos (*squatters*).

"En señal de conformidad con todas las estipulaciones del presente contrato, los comparecientes de la primera y segunda parte estampan sus firmas al calce y sus iniciales en cada una de las hojas, todo ello en presencia de los testigos que firman conjuntamente.

"SUCN. DE HARRY F. BESOSA
*Vendedora*
"Por: (Fdo.) HARRY F. BESOSA
"SAUL KOGAN
*Comprador*
"Por: (Fdo.) S. KOGAN

"Testigos:
"(Fdo.) JUAN ENRIQUE GÉIGEL
"(Fdo.) FERNANDO CASO"

No hay controversia en cuanto a que Kogan entró en la inmediata posesión de las fincas, si bien la abandonó más tarde, ni de que la Sucesión estaba lista, deseosa y en aptitud de traspasarle el título de las propiedades en o antes de la expiración de los 90 días, pero que Kogan se negó a aceptar las mismas y a pagar el remanente del precio convenido.

El demandado señala varios errores pero su principal contención es que el documento aquí envuelto no era un contrato perfeccionado con cláusula de ejecución aplazada, sino más bien un contrato de opción que le daba al demandado el privilegio de comprar o no comprar las fincas según eligiera.

No había motivo alguno para que las partes no hubieran perfeccionado un contrato válido mediante el cual (1) el demandado hubiera tenido una opción unilateral por término fijo para comprar las fincas; (2) la opción hubiera obligado a los demandantes pero no al demandado; y (3) la única responsabilidad en que el demandado hubiera incurrido de optar por no hacer uso de su opción a comprar las fincas, hubiera sido la pérdida de los $1,000 pagados por él. *Collazo* v. *Conesa*, 70 D.P.R. 155, 159–61. El demandado sostiene que el documento del 4 de enero de 1949 era un contrato de tal naturaleza. Pero el tribunal inferior resolvió lo contrario. Decidió que el documento encerraba un contrato perfeccionado y que lo único que quedaba pendiente era la consumación y formalización del contrato. Estas contenciones contradictorias nos obligan a examinar el documento en detalle.

El párrafo 4 dice que la "Sucesión . . . ha convenido con . . . Kogan, la compraventa de las dos fincas", que están convenidos ya todos los términos y condiciones "del referido contrato de compraventa", que por los motivos expuestos la Sucesión no se halla en condiciones de proceder a formalizar en definitiva "el contrato de compraventa acordado . . .", y que Kogan puede tomar posesión inmediata de las fincas "cuya compraventa se ha convenido . . .".

En la cláusula Primera la Sucesión "se compromete y obliga a vender" las fincas a Kogan. En la cláusula Segunda se

fijan el precio, el término y la forma de pago. En la cláusula Tercera Kogan "se compromete y obliga a comprar las propiedades . . . por el precio indicado en la segunda cláusula." En la cláusula Cuarta las partes se comprometen a otorgar la escritura y a cumplir con sus respectivas obligaciones dentro del término de 90 días. En la cláusula Quinta Kogan entrega a la Sucesión la suma de $1,000 como parte del precio de venta, disponiéndose no obstante que si Kogan "dejare de cumplir la obligación contraída por él" de comprar las fincas, la cantidad de $1,000 será retenida por la Sucesión en concepto de indemnización por el incumplimiento del contrato y como compensación por el uso de las fincas.

La cláusula Sexta provee para la inmediata posesión de las propiedades por parte de Kogan, con excepción de que un inquilino podría continuar ocupando una casa hasta la fecha en que se otorgara la escritura, correspondiéndole a Kogan el canon de arrendamiento. La cláusula Séptima le exige a Kogan restituir la posesión de las fincas a la Sucesión si dejare de cumplir "la obligación de compra contraída por el...". En la cláusula Octava Kogan "conviene en comprar" las fincas sin imponer obligación alguna a la Sucesión de sacar los inquilinos y sin imponer a la "vendedora" la obligación de indemnizar "al comprador" por la presencia o permanencia de intrusos.

Nada encontramos en el documento por el cual Kogan expresamente se reserve el derecho de elegir comprar o no comprar las referidas fincas. Por otro lado, del documento surge que Kogan conviene expresamente en comprar las fincas por un precio convenido. Opinamos que la disposición en cuanto a los 90 días no se insertó con el fin de que Kogan decidiera dentro de dicho término si deseaba comprar las propiedades. Por el contrario, creemos que la cláusula Cuarta fija el término de 90 días como el período dentro del cual las partes venían obligadas a otorgar la escritura y a dar cumplimiento a sus obligaciones recíprocas. Se pospuso la ejecución, no obstante haberse convenido en cuanto a todos los términos del contrato,

solamente porque la Sucesión no estaba aún en posición de otorgar la escritura formal.

En las cláusulas que acabamos de sintetizar las partes repetidamente emplearon a través de todo el documento la terminología de una obligación de parte de los demandantes de vender y de parte de Kogan de comprar las fincas.   En consecuencia, parece razonablemente claro que las partes otorgaron un contrato bilateral de compraventa, obligatorio recíprocamente para ambas partes.   No obstante, el demandado insiste en que el documento era una opción unilateral que le permitía optar por no comprar las fincas.

Es cierto que en el título del documento y en varias partes del texto se usa la palabra "opción".   Pero un nombre erróneo o un término esporádico esparcido a través de las cláusulas de un contrato no es decisivo.   Igual que en el caso de un estatuto, los varios términos de un contrato deben leerse conjuntamente y armonizarse con el fin de determinar la verdadera intención de las partes.  Casos citados en 12 Am. Jur. 772, nota 12; 1 *Restatement, Contracts,* sección 235 (*c*), pág. 319.  Al leer el documento en su totalidad, encontramos que es difícil eludir la conclusión de que el contrato era bilateral.

■ El demandado cree significativo el hecho de que en la cláusula Quinta Kogan entrega $1,000 "como causa y en consideración a la opción . . .".   Arguye que si se hubiera efectuado la compraventa por el documento, los $1,000 habrían sido parte del precio de venta y no la causa para la opción. Si esta disposición imperara por sí sola o si las otras cláusulas del documento estuvieran en armonía con ella, habría alguna fuerza en este argumento.   Pero en la misma cláusula Quinta las partes claramente expresaron su intención de crear una obligación de comprar por parte de Kogan y no de darle una opción uniláteral.   En dicha cláusula las partes convinieron en que si Kogan "dejare de cumplir *la obligación contraída por él* de comprar las fincas por el precio y demás condiciones. antes consignadas," entonces la Sucesión retendría los $1,000 entregádosle por Kogan en concepto de indemnización *por tal*

*incumplimiento de contrato* y por el uso de las fincas. Más adelante resolvemos que ésta es una mera cláusula penal. Pero a nuestros fines aquí, es importante hacer constar que aun la cláusula Quinta expresamente indica que Kogan asumió la obligación de comprar las fincas—un contrato que es muy diferente a una opción de compra.

El demandado también sostiene que la disposición de la cláusula Quinta para la retención de los $1,000 por el uso de las fincas demuestra que la compraventa no se había perfeccionado y que solamente es compatible esa disposición con la teoría de una opción. Pero la cláusula en cuanto a la retención de los $1,000 también dice que es por *incumplimiento de contrato*. Y de cualquier modo, de la cláusula Quinta en su totalidad, como ya hemos dicho, surge un contrato de compraventa en vez de uno de opción.

■ El demandado alega que la disposición de la cláusula Séptima en cuanto a la restitución de las fincas a la Sucesión, nada quiere decir a menos que prevalezca la teoría de una opción. Pero esta cláusula dispone la restitución de las fincas si Kogan "dejare de cumplir *la obligación de compra contraída por él . . .*". Ésta es una afirmación expresa de que Kogan asumió una obligación de comprar las fincas. Niega el concepto de que Kogan solamente tenía una opción de compra. Además, la cláusula Séptima está íntimamente relacionada con la Sexta. Esta última dispone que Kogan tomaría posesión inmediata y que cierto inquilino de las fincas continuaría allí solamente "hasta la fecha en que se otorgue la escritura de compraventa", y que el inquilino pagaría a Kogan "desde este momento" el correspondiente canon. Nos es difícil creer que bajo una mera opción las partes hubieran provisto que Kogan entraría en posesión de las fincas y ejercería actos en calidad de dueño tales como cobrar y retener para sí el correspondiente canon de arrendamiento.

■■ El demandado también descansa en el hecho de que en su demanda original los demandantes caracterizaron el documento del 4 de enero de 1949 como una opción que según los

demandantes el demandado ejercitó el 3 de marzo de 1949, conviniendo en la compra de las fincas, con una modificación de los términos del pago, por la cual el demandado pagaría $13,000 en seguida y otorgaría una hipoteca por $6,000. Sin embargo, en la demanda enmendada los demandantes asumieron la posición de que el documento original era un contrato perfeccionado. Nos damos cuenta de que la interpretación dada a un contrato por las propias partes con posterioridad a su otorgamiento, es usualmente importante al determinar el significado de disposiciones del contrato que estén en controversia. Casos citados en 12 Am. Jur. 787–88, notas 3 y 4; 1 *Restatement, Contracts*, sección 235 (*e*), pág. 319. Pero aquí los términos del propio documento tan claramente indican un contrato bilateral más bien que una opción unilateral, que no podemos resolver que esta actuación de los demandantes es suficiente para ir por encima de los términos del propio contrato.

▮ En vista de nuestra conclusión de que el documento aquí envuelto era un contrato de compraventa, el artículo 1340 del Código Civil, ed. de 1930, es aplicable a este caso. (¹) El argumento del demandado en sentido contrario debe rechazarse ya que está predicado en la premisa falsa de que el demandado meramente obtuvo una opción y no se obligó a comprar.

El caso de *Alvarez* v. *Manzano*, 66 D.P.R. 361, es de estricta aplicación. Dicho caso trataba de un contrato por el cual los demandados convinieron en vender, y el demandante en comprar, ciertos derechos hereditarios. Se firmó un documento privado en el cual se dispuso que la escritura formal sería otorgada en una fecha futura ya que era necesario previamente determinar el monto de ciertas deudas. Confirmamos una sentencia ordenando el cumplimiento específico del

---

(¹) El artículo 1340 prescribe así: "La promesa de vender o comprar, habiendo conformidad en la cosa y en el precio, dará derecho a los contratantes para reclamar recíprocamente el cumplimiento del contrato.

"Siempre que no pueda cumplirse la promesa de compra y venta, regirá para vendedor y comprador, según los casos, lo dispuesto acerca de las obligaciones y contratos en el presente libro."

contrato.   Dijimos a la pág. 369: "El contrato quedó per-
feccionado . . . cuando las dos partes, vendedores y compra-
dor, llegaron a un acuerdo respecto al precio y a la cosa.   Lo
que las partes pospusieron para llevar a cabo . . . fué la con-
sumación del contrato, y no pudiéndose verificar la consuma-
ción entonces, la exigió el demandante a través de este pleito
de cumplimiento de contrato."   Aquí también obligaciones re-
cíprocas—una para comprar, la otra para vender—fueron
asumidas por las partes, con el motivo expuesto en el contrato
para la demora en el otorgamiento de la escritura.   Al mismo
efecto, *Collazo* v. *Conesa*, supra; *Becerra* v. *Cobián*, 69 D.P.R.
616, 620; *Carlo* v. *Vargas*, 66 D.P.R. 407, 411; *Jacinto* v.
*Carpenter*, 46 Jurisprudencia Filipina 926 (1923); *Bo-
rromeo* v. *Franco et al.*, 5 Jurisprudencia Filipina 51 (1905).

El documento firmado por las partes el 4 de enero de 1949
fué un contrato de compraventa debidamente perfeccionado
en el cual la formalidad de otorgar una escritura fué pos-
puesta por 90 días.   Como hemos visto, Kogan rehusó aceptar
el traspaso del título de las dos fincas que la Sucesión estaba
lista, deseosa y en aptitud de entregarle el 7 de marzo de 1949.
Por consiguiente, los demandantes tenían derecho a exigir el
cumplimiento específico del contrato.   Artículos 1334, 1339,
1210 y 1231 del Código Civil; *Alvarez* v. *Manzano*, supra;
*Varcárcel* v. *Sancho Bonet, Tes.*, 61 D.P.R. 213, 216–17;
*West India Oil Co. (P. R.)* v. *Sancho Bonet, Tes.*, 54 D.P.R.
732, 741–42.

■■ Seguidamente el demandado alega que el tribunal
inferior cometió error al resolver que la cláusula Quinta del
contrato era en efecto una cláusula penal, que está gobernada
por los artículos 1106–07 del Código Civil.(²)   Nuevamente
aquí es importante indicar que de su faz la cláusula Quinta
refleja un contrato obligatorio para Kogan de comprar las

(²) "Artículo 1106.—En las obligaciones con cláusula penal, la pena
substituirá a la indemnización de daños y al abono de intereses en caso de
falta de cumplimiento, si otra cosa no se hubiere pactado.

"Sólo podrá hacerse efectiva la pena cuando ésta fuere exigible con-
forme a las disposiciones del presente código.

fincas, más bien que una opción que él podría ejercitar o no según eligiera. Lenguaje tal como "la obligación contraída por él de comprar", y la pérdida de $1,000 como indemnización "por tal incumplimiento", es inconsistente con la teoría de una mera opción. Es decir, si existió una opción verdad, no podía haber incumplimiento del contrato propiamente dicho, porque el no hacer uso de una opción no constituye incumplimiento de un contrato. De ahí que las partes no contemplaran que la indemnización de $1,000 estaba condicionada a la existencia de una opción, más el no ejercitar ésta. Por el contrario, Kogan estaba obligado a comprar; y en la cláusula Quinta convino en que la Sucesión tenía derecho a retener los $1,000 como indemnización si no cumplía su contrato de compra. El tribunal inferior, por tanto, actuó correctamente al resolver bajo estas circunstancias que la cláusula en cuestión era una típica cláusula penal si no se cumplía con el contrato de compraventa. Y bajo el artículo 1107 la presencia de una cláusula penal no impide la insistencia de la parte perjudicada en el cumplimiento del contrato a no ser que el contrato expresamente le reserve a la otra parte la elección entre cumplir con el contrato o pagar la penalidad. Toda vez que el contrato en el presente caso no contiene tal reserva expresa, los demandantes tenían derecho al cumplimiento del contrato. *Carlo* v. *Vargas*, supra, pág. 412 y autoridades citadas; Anotaciones, 32 A.L.R. 584, 98 A.L.R. 887.

▊ Finalmente el demandado arguye que aun suponiendo que el documento del 4 de enero de 1949 no fuera una opción sino un contrato de compraventa, la sentencia concediendo el cumplimiento específico del contrato infringió el artículo 1343 del Código Civil, que dispone que "Si hubiesen mediado arras o señal en el contrato de compra y venta, podrá

---

"Artículo 1107.—El deudor no podrá eximirse de cumplir la obligación pagando la pena, sino en el caso de que expresamente le hubiese sido reservado este derecho. Tampoco el acreedor podrá exigir conjuntamente el cumplimiento de la obligación y la satisfacción de la pena, sin que esta facultad le haya sido claramente otorgada."

rescindirse el contrato allanándose el comprador a perderlas, o el vendedor a devolverlas duplicadas."

El demandado admite que en el contrato no hay disposición alguna que caracterice expresamente como arras los $1,000 entregados por él a los demandantes. Alega, sin embargo, que "de interpretarse el contrato como uno de compraventa, necesariamente ha de considerarse como arras dicha suma de $1,000, en vista de las estipulaciones contenidas en las cláusulas Quinta y Séptima del contrato." Por consiguiente, afirma el demandado que a tenor con el artículo 1343 él puede rescindir el contrato de compraventa conviniendo en la pérdida de los $1,000, y que siempre ha estado conforme en que los demandantes retengan dicha cantidad.

La dificultad estriba en que la cláusula Quinta expresamente dispone que los $1,000 eran parte del precio de compra y no arras. En ausencia de una disposición expresa al efecto de que la cantidad entregada sea arras, no es aplicable el artículo 1343. 10 Manresa 84 (4ta. ed., 1931) ; 23 Scaevola 364 (ed. de 1906).

*La sentencia del tribunal de distrito ordenándole al demandado, previo otorgamiento por los demandantes de las correspondientes escrituras, a pagarle a éstos (1) el precio convenido de $20,000, menos la suma de $1,000 ya pagádales como parte del precio de venta, (2) las costas y (3) $500 para honorarios de abogado, será confirmada.*

El Juez Presidente señor Todd, Jr., no estuvo presente cuando se firmó la sentencia, pero intervino en la discusión del caso y concurre en la opinión.

Opinión disidente emitida por el Juez Asociado Señor Negrón Fernández.

No estoy conforme. Lo menos que puede decirse del contrato suscrito por las partes es que es ambiguo. Es cierto que en el mismo se hace referencia al "contrato de compraventa acordado", usándose frases tales como "se compromete y obliga a vender" (refiriéndose a la Sucesión) ; "se compromete y obliga a comprar" (refiriéndose a Kogan) y "las partes proce-

derán al otorgamiento de la escritura de compraventa y al cumplimiento de las respectivas obligaciones que ambas han contraído en el presente instrumento", todo lo cual en opinión del Tribunal establece que el contrato de compraventa quedó perfeccionado, quedando aplazada su ejecución por el término de noventa días, según sus propios términos. Pero también es cierto que no ya en su título meramente, si que en las cláusulas en que se establecen las condiciones del contrato, se habla más de una vez de *"contrato de opción de compraventa"*; "la obligación de compra contraída por él [Kogan] mediante el otorgamiento de *esta opción"*; "las propiedades objeto de *esta opción"*; "El compareciente de la segunda parte [Kogan] entrega al compareciente de la primera parte en el acto del otorgamiento de este instrumento como causa y *en consideración a la opción que se le concede por el mismo*, la suma de Mil Dólares ($1,000) . . .". (Bastardillas nuestras.)

En la cláusula quinta, donde se consigna lo arriba citado, se establece que "si dicho compareciente de la segunda parte dejare de cumplir la obligación contraída por él de comprar las fincas por el precio y demás condiciones antes consignadas, la referida cantidad de Mil Dólares ($1,000) *será retenida* por la Sucesión . . . en concepto de indemnización por tal incumplimiento . . .", y en la cláusula séptima se establece la obligación de Kogan de "restituir la posesión de las propiedades antes mencionadas a la Sucesión . . . si por cualquier circunstancia dicho compareciente dejare de cumplir la obligación de compra contraída por él *mediante el otorgamiento de esta opción"*. (Bastardillas nuestras.) En las cláusulas sobre comparecencia, las partes "manifiestan haber convenido el otorgamiento de un contrato de *opción de compraventa* de fincas rústicas, el cual llevan a efecto por medio de este instrumento" y consignan más adelante que "han decidido formalizar ahora este contrato de *opción de compraventa* bajo las siguientes cláusulas". (Bastardillas nuestras.)

Considero que el contrato en cuestión es uno que confiere opción a Kogan para la compra de la propiedad en él descrita,

bajo las condiciones estipuladas en dicho contrato—una de las cuales era que la Sucesión retendría la suma de mil dólares entregádale por Kogan si éste no compraba dentro de los noventa días siguientes—ya que las condiciones todas que surgen del referido documento, y que el Tribunal examina en su opinión para llegar a la conclusión de que se trata de un contrato de compraventa perfeccionado con ejecución aplazada, son compatibles con la teoría de la opción, mientras que las cláusulas relativas a la opción no son compatibles con la teoría del contrato de compraventa perfeccionado con ejecución aplazada. Ello puede claramente observarse de la obligación impuesta a Kogan de restituir la posesión de la propiedad a la Sucesión "si por cualquier circunstancia dicho compareciente dejare de cumplir la obligación de compra contraída por él mediante el otorgamiento de esta opción". No puede concebirse que si en efecto la intención de las partes fué perfeccionar un contrato de compraventa con ejecución aplazada, tuvieran que pactar sobre la entrega de la posesión por Kogan a la vendedora si Kogan no compraba.

El término "opción de compraventa" usado en el documento que nos ocupa, tiene una acepción jurídica definida y su uso continuo en el contrato no puede pasarse por alto al determinar cuál fué la intención de las partes en cuanto a lo pactado, sobre todo cuando en su redacción intervinieron personas conocedoras de la ley. Uno de los miembros de la Sucesión (y representante de la misma) así como uno de los testigos en dicho documento, son miembros prominentes de nuestro foro.

Aunque estoy conforme con la observación que hace el Tribunal de que si la intención era conceder una opción, el documento ha podido redactarse con mayor claridad, con mayor razón debe hacerse la observación de que si la intención de las partes era perfeccionar un contrato de compraventa con ejecución aplazada, era innecesario hacer constante referencia a la opción e incluir en dicho contrato condiciones incompatibles con la teoría de la compraventa con ejecución aplazada.

Como dije al comienzo, lo menos que puede decirse del contrato que nos ocupa es que es ambiguo. Y en tal situación, creo de aplicación la máxima *Ambiguum pactum contra venditorem interpretandum est.* No considero aplicable la jurisprudencia citada en la opinión del Tribunal, sencillamente porque el texto del contrato envuelto en este caso no ofrece, a mi juicio, sitio para ello.

En consecuencia, soy de opinión que la sentencia apelada debería revocarse y la demanda declararse sin lugar.