ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**[1]

| | | |
|---|---|---|
| JOSÉ LUIS RODRÍGUEZ Y OTROS<br>DEMANDANTE(S)-APELADA(S)<br><br>V.<br><br>JUAN ARCE COLLAZO<br>DEMANDADA(S)-APELANTE(S) | **KLAN202400148** | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de ARECIBO<br><br>Caso Núm.<br>**AR2019CV01693 (401)**<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

*Barresi Ramos*, juez ponente

### SENTENCIA

En San Juan, Puerto Rico, hoy día 26 de septiembre de 2024.

Comparecen ante este Tribunal de Apelaciones, los señores **JUAN ARCE COLLAZO** y **GIOVANNI RAMOS BETANCOURT** (señores **ARCE COLLAZO** y **RAMOS BETANCOURT**) mediante *Certiorari* incoado el 30 de enero de 2024. En su escrito, nos solicitan que revisemos la *Sentencia Parcial* emitida el 17 de enero de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Arecibo.[2] En la antedicha decisión, el foro *a quo* decretó el desistimiento y archivo, con perjuicio, de la causa de acción fundamentada en la violación de la cláusula de no competencia (cláusula número 30 del *Contrato*).

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

---

[1] Véase *Orden Administrativa* OAJP-2021-086 decretada el 4 de noviembre de 2021.
[2] Este dictamen judicial fue notificado y archivado en autos el 18 de enero de 2024. Apéndice del *Certiorari,* págs. 1- 2.

Número Identificador:  SEN2024_____

## - I -

El 10 de mayo de 2016, el señor **JOSÉ LUIS RODRÍGUEZ GONZÁLEZ** (señor **RODRÍGUEZ GONZÁLEZ**), en representación de la corporación **TRUCK STOP BAR & GRILL** (**TRUCK STOP**), y los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** suscribieron un *Contrato de Arrendamiento de Restaurante y Venta de Negocio en Marcha* (*Contrato*) concerniente al restaurante **TRUCK STOP**.[3]

Posteriormente, el 6 de septiembre de 2019, el señor **RODRÍGUEZ GONZÁLEZ** entabló una *Demanda* sobre incumplimiento de contrato y cobro de dinero.[4] Específicamente, en el inciso 16 de la *Demanda,* expuso que, los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** por sus actos lo obligaron "a realizar un cambio de concepto del establecimiento, toda vez que el demandado inauguró y contin[ú]a operando un establecimiento con el mismo concepto...". Agregó, en el inciso 17 de la *Demanda,* que "los gastos en los que ha tenido que incurrir... por concepto de la creación del nuevo concepto, materiales, equipos [y] mano de obra ascienden a la suma de $168,000.00". Asimismo, solicitó otros remedios concernientes al alegado incumplimiento del *Contrato*.

Entonces, el 27 de enero de 2020, los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** presentaron su *Contestación a Demanda y Reconvención.*[5] Aseguraron que el señor **RODRÍGUEZ GONZÁLEZ** no cambió el concepto de su establecimiento, sino que invirtió en renovaciones y mejoras al restaurante **TRUCK STOP**. Expresaron que las mejoras y renovaciones de **TRUCK STOP** fueron parte de una inversión para atraer comensales a las facilidades. Ampliaron que su negocio *Salcocho* no es el mismo concepto.[6] Incluso, en su *Reconvención*, los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** adujeron que mediante la compra de la "llave del negocio" son dueños del concepto y del negocio; por lo que, se les debe reconocer la titularidad del negocio, o en su

---

[3] Apéndice del *Certiorari,* págs. 32- 37.
[4] *Íd.,* págs. 70- 80.
[5] *Íd.,* págs. 63- 69.
[6] *Íd.*, pág. 65. Véase, además, *Transcripción de la Prueba Oral*, pág. 12.

defecto, se les reintegre la cantidad de $50,000.00 por engaños relacionados a la presunta adquisición del negocio. Más tarde, el 10 de marzo de 2020, el señor **RODRÍGUEZ GONZÁLEZ** presentó una *Réplica a Reconvención.*[7]

Luego de varios incidentes procesales, el 31 de enero de 2022, los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** presentaron una *Primera Enmienda a la Contestación a Demanda y Reconvención*.[8]

Meses después, el 9 de agosto de 2022, los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** presentaron una *Moción para que se Dicte Sentencia Sumaria Parcial*.[9] Argumentaron que la cláusula número 30 del *Contrato* debe ser declarada nula y, en consecuencia, desestimar cualquier solicitud de remedio concerniente su alegado incumplimiento. El 29 de agosto de 2022, el señor **RODRÍGUEZ GONZÁLEZ** presentó su *Réplica a Moción Solicitando Sentencia Sumaria*.[10] El 5 de septiembre de 2022, se dictaminó *Orden* disponiendo: "[e]nterado, siendo la controversia traída una de estricto derecho, la calendarización de la Conferencia con Antelación a Juicio continúa según calendarizada, en la misma se [argumentará la] moción de sentencia sumaria."[11]

Subsiguientemente, el 19 de abril de 2023, se emitió una *Orden* en la cual se concedió un término de veinte (20) días para presentar su oposición a la sentencia sumaria parcial al señor **RODRÍGUEZ GONZÁLEZ**.[12] A los pocos días, el 21 de abril de 2023, los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** presentaron su *Reconsideración a Orden con Fecha del 20 de abril de 2023* en la cual expusieron que el 29 de agosto de 2022 el señor **RODRÍGUEZ GONZÁLEZ** había presentado su oposición.[13] El 8 de mayo de 2023, el señor **RODRÍGUEZ GONZÁLEZ** presentó una *Moción en Cumplimiento Orden* enunciando que el

---

[7] Apéndice del *Certiorari,* págs. 60- 62.
[8] *Íd.*, págs. 52- 59.
[9] *Íd.*, págs. 16- 49.
[10] *Íd.*, págs. 9- 15.
[11] *Íd.*, pág. 8.
[12] *Íd.*, pág. 7.
[13] *Íd.*, págs. 5- 6.

29 de agosto de 2022 había sometido su oposición.[14] Así las cosas, el 30 de mayo de 2023, se pronunció la siguiente *Orden*: "[c]ontroversia de sentencia sumaria queda sometida".[15]

El 17 de enero de 2024, se celebró una audiencia. Ese mismo día, el tribunal primario determinó la *Sentencia Parcial* apelada.

Insatisfecho, el 30 de enero de 2024, los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** acudieron ante este foro intermedio revisor mediante *Certiorari* señalando el(los) siguiente(s) error(es):

> Erró el Honorable Tribunal de Primera Instancia porque tenía que desestimar la alegación 16 y 17 de la Demanda por ser los remedios que el demandante solicitó en violación a la cláusula de no competencia del contrato en contra del demandado.
>
> Erró el Honorable Tribunal de Primera Instancia porque en la Sentencia Parcial <u>no</u> consignó los hechos que quedaron incontrovertidos en el caso.

El 2 de febrero de 2024, intimamos *Resolución* concediendo, entre otras cosas, un término de treinta (30) días para presentar su alegato en oposición al señor **RODRÍGUEZ GONZÁLEZ**. El 15 de febrero de 2024, el señor **RODRÍGUEZ GONZÁLEZ** presentó su *Alegato en Oposición a Recurso de Certiorari*. El 20 de febrero de 2024, ante el hecho de que se acude de una *Sentencia Parcial*, mediante *Resolución* se acogió el recurso como una *Apelación* y se le requirió a Secretaría proceder con el cambio de materia para propósitos administrativos.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

- II -

- A – *Obligaciones y Contratos*

---

[14] *Íd.*, pág. 4.
[15] Apéndice del *Certiorari*, pág. 3.

En nuestro ordenamiento jurídico, las materias de *obligaciones* y *contratos* se rigen por el Código Civil de Puerto Rico.[16] Toda *obligación* consiste en dar, hacer o no hacer alguna cosa.[17] En conformidad, las *obligaciones* nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en los que intervenga cualquier género de culpa o negligencia.[18] Así, las *obligaciones* que nacen de los contratos tienen fuerza de ley entre las partes contratantes y por tal razón deben cumplirse acorde se hayan especificado por éstas.[19] Ello, en conformidad con el principio rector de *pacta sunt servanda*.

En Puerto Rico, rige el principio de la *libertad de contratación*. Mediante esta máxima del derecho, las partes contratantes se obligan a todos los extremos de lo pactado, las cláusulas y las condiciones que tengan por conveniente, siempre y cuando sean conformes a la ley, a la moral y al orden público.[20]

Por otro lado, los *contratos* son negocios jurídicos y fuente de obligación.[21] Por esta razón, un *contrato* existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.[22] Empero, para que un *contrato* se origine deben concurrir los siguientes requisitos: (i) *consentimiento* de los contratantes; (ii) *objeto* cierto que sea materia del contrato; y (iii) *causa* de la obligación que se establezca.[23] Una vez concurran las condiciones esenciales para su validez, los *contratos* serán obligatorios para las partes.[24] A su vez, "los contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado,

---

[16] Por tratarse de hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020 (Ley Núm. 55 de 1 de enero de 2020), nos limitaremos a discutir las disposiciones aplicables y correspondientes al Código Civil de Puerto Rico de 1930.

[17] Art. 1041 del Código Civil de 1930, 31 LPRA § 2991.

[18] Art. 1042 del Código Civil de 1930, 31 LPRA § 2993.

[19] Art. 1044 del Código Civil de 1930, 31 LPRA § 2994.

[20] Art. 1207 del Código Civil de 1930, 31 LPRA § 3372. *Feliciano v. Luxury Hotels Int'l.*, 210 DPR 712 (2022); *Demeter Int´l v. Srio. Hacienda*, 199 DPR 706 (2018).

[21] *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000).

[22] Art. 1206 del Código Civil de 1930, 31 LPRA § 3371.

[23] Art. 1213 del Código Civil de 1930, 31 LPRA § 3391.

[24] Art. 1230 del Código Civil de 1930, 31 LPRA § 3451.

siempre que en ellos concurran las condiciones esenciales para su validez".[25] Lo cual implica que perfeccionado un *contrato* por el mero consentimiento, las partes están obligadas por lo expresamente convenido así como a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[26] Si alguno de los contratantes incurre en dolo, negligencia o morosidad en el cumplimiento de sus obligaciones, responderá por los daños y perjuicios causados.[27]

Así pues, el consentimiento en los *contratos* se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que constituya el objeto del acuerdo.[28] No obstante, la validez y el cumplimiento de la contratación no puede dejarse al arbitrio de unas de las partes.[29]

El Código Civil de 1930 principia que, si los términos de un *contrato* son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.[30] De manera opuesta, si las palabras parecieran contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas.[31] Por consiguiente, las cláusulas de los *contratos* deberán interpretarse las unas con las otras, atribuyéndole a las dudosas el sentido que resulte del conjunto de todas.[32] Nuestro Tribunal Supremo ha expresado que al igual que en el caso de un estatuto, los términos de un *contrato* deben leerse conjuntamente y armonizarse para determinar la verdadera intención de las partes.[33] Se estiman como términos claros "aquellos que por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones, y sin necesitar para su

---

[25] Art. 1230 del Código Civil de 1930, 31 LPRA § 3451.
[26] Arts. 1210 del Código Civil de 1930, 31 LPRA § 3375.
[27] Art. 1054 del Código Civil de 1930, 31 LPRA § 3018.
[28] Art. 1214 del Código Civil de 1930, 31 LPRA § 3401.
[29] Art. 1208 del Código Civil de 1930, 31 LPRA § 3373.
[30] Art. 1233 del Código Civil de 1930, 31 LPRA § 3471.
[31] *Íd.*
[32] Art. 1237 del Código Civil de 1930, 31 LPRA § 3475.
[33] *Caballero v. Kogan*, 73 DPR 666, 674 (1952).

compresión [de] razonamientos o demostraciones susceptibles de impugnación".[34]

En cambio, si el texto del *contrato* no permite la compresión única de lo convenido es necesario recurrir a las normas de interpretación que ofrecen el Código Civil de Puerto Rico y la jurisprudencia. En última instancia, la intención de las partes será el criterio fundamental para fijar el alcance de las obligaciones contractuales.[35] La intención puede demostrarse por cualquier medio, y el juzgador deberá examinar todas las circunstancias concurrentes al otorgamiento del *contrato* para adjudicar la intención de las partes, incluyendo los actos anteriores, coetáneos y posteriores.[36] Es preciso apuntar que los tribunales tienen la facultad y el deber de velar por el cumplimiento de los *contratos*. Por tanto, no debemos relevar a una parte del cumplimiento de su obligación contractual cuando el *contrato* sea legal, válido y no contenga vicio alguno.[37]

En las obligaciones recíprocas, la parte perjudicada podrá escoger entre exigir el cumplimiento o la resolución de la obligación con el resarcimiento de daños; o podrá pedir la resolución cuando resulte imposible el cumplimiento.[38]

### - B – *Contrato de Arrendamiento*

Uno de los convenios más practicados en nuestra sociedad es el *contrato* de arrendamiento. Un *contrato de arrendamiento* puede ser de cosas, obras o servicios.[39] El arrendamiento de cosas es un *contrato* mediante el cual una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto.[40] Se le conoce como arrendador quien se obliga a ceder el uso de la cosa, ejecutar la obra o prestar el servicio; y el arrendatario es quien adquiere el uso de la cosa, el derecho a la obra o servicio

---

[34] *Sucn. Ramírez v. Tribl. Superior*, 81 DPR 357, 361 (1959).
[35] *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 DPR 64, 69 (1983).
[36] Art. 1234 del Código Civil de 1930, 31 LPRA § 3472.
[37] *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).
[38] Art. 1077 del Código Civil de 1930, 31 LPRA § 3052.
[39] Art. 1432 del Código Civil de 1930, 31 LPRA § 4011.
[40] Art. 1433 del Código Civil de 1930, 31 LPRA § 4012.

que se obliga.[41] Al perfeccionarse el *contrato de arrendamiento* y aflorar su existencia, surgen las obligaciones que a una y a otra parte le impone el Código Civil. En consecuencia, se comprometen recíprocamente y surgen obligaciones bilaterales.

Entre las obligaciones del arrendatario, esta su obligación de pagar el precio del arrendamiento en los términos convenidos.[42] Otro de los requisitos esenciales del *arrendamiento* es que el acuerdo sea por *tiempo determinado*, es decir, que **tenga una limitación temporal**. La expresión *tiempo determinado* conlleva en sí misma un retroceso a que se concrete "el arrendamiento a perpetuidad claramente, pero obliga a que se haga constar necesariamente la duración del contrato (un año, un mes etc ...)."[43] Incluso, "[l]os arrendamientos por tiempo indeterminado han sido consignados por la jurisprudencia con criterios fluctuantes en cuanto a su validez, ...".[44] Evidentemente, "deberán ser nulas las cláusulas que establecen el plazo contractual indefinido o indeterminado."[45]

Así las cosas, cuando las partes no fijen un plazo, es de aplicabilidad el Artículo 1471 del Código Civil de 1930, que expresa:

> Si no se hubiese fijado plazo al arrendamiento, se entiende hecho por años cuando se ha fijado un alquiler anual, por meses cuando es mensual por días cuando es diario.
> En todo caso cesa el arrendamiento, sin necesidad de requerimiento especial cumplido el término.[46]

### - C – *Cláusula de No Competencia*

Las *cláusulas de no competencia* son aquellas incluidas en un *contrato* con el propósito de restringir el que una de las partes se involucre en un negocio o actividad. Esto es así debido a que persigue evitar la competencia entre negocios o actividades similares por un período preciso de tiempo.

---

[41] Art. 1436 del Código Civil de 1930, 31 LPRA § 4031.
[42] Art. 1445 del Código Civil de 1930, 31 LPRA § 4052.
[43] Díez-Picazo y Gullón, Sistema de Derecho Civil, 7ta Ed., Vol. II, Editorial Tecnos, Madrid, 1995, a la pág. 363.
[44] *Íd.*
[45] *Íd.*
[46] 31 LPRA § 4092.

Se ha reconocido la validez de los acuerdos de *no competencia*, según los términos de la razonabilidad. Para ser razonable, un acuerdo de *no competir* debe cumplir con los siguientes elementos: (1) debe ser necesario para proteger un interés legítimo del patrono; (2) no debe imponer al empleado una carga demasiado onerosa; y (3) no debe afectar demasiado al público.[47] Es menester señalar, que existe otro factor a considerar y es lo relativo al área en que se le prohíbe competir al empleado; la duración de dicha restricción; el tipo de clientes que le está vedado atender; así como el tipo de servicios que se le prohíbe rendir.[48]

Acerca del interés legítimo del patrono en el acuerdo, lo fundamental es determinar si al éste no recibir la protección de una *cláusula de no competencia*, su negocio se vería sustancialmente afectado. Conforme a la doctrina, dicho interés se medirá a la luz de la posición del empleado dentro de la empresa, por ejemplo, si debido a la posición que asume en la empresa, está facultado para competir de forma efectiva con su patrono en un futuro.[49] De esta forma, las *cláusulas de no competencia* pueden conllevar límites geográficos, limitándose al área estrictamente necesaria para evitar la competencia real entre el patrono y el empleado.[50] También, puede hacer referencia a los clientes, sin embargo, éste sólo puede referirse a aquellos que el empleado atendió personalmente durante un período razonable de tiempo antes de renunciar, o en un período inmediatamente anterior a la renuncia, todavía eran clientes del patrono.[51]

En lo concerniente al tiempo en que dichas cláusulas pueden tener vigencia, nuestra jurisprudencia ha establecido que la misma no debe exceder de doce (12) meses, entendiéndose que cualquier tiempo adicional es excesivo e innecesario para proteger adecuadamente al patrono.[52] Estos elementos

---

[47] *Arthur Young & Co. v. Vega III*, 136 DPR 157, 167 (1994).
[48] *Íd.*
[49] *Íd.*, en la pág. 175.
[50] *Íd.*, en la pág. 176.
[51] *Íd.*
[52] *Arthur Young & Co. v. Vega III*, *supra*.

descritos se evaluarán teniendo en cuenta la naturaleza de la industria involucrada y el posible interés público relacionado.

En ese contexto, ante la firma de este tipo de contrato el alto foro ha establecido que el patrono debe ofrecer una contraprestación a cambio del acuerdo de *no competir* por parte del empleado. Dicha contraprestación puede consistir, por ejemplo, en la obtención de un ascenso, de beneficios adicionales en el trabajo o incluso la obtención del empleo.[53] Cardinalmente, el Alto Foro ha manifestado sin rodeos, que los contratos que no se ajusten a los elementos antes discutidos se considerarán, además de contrarios a la buena fe contractual, violadores del orden público por restringir de forma excesiva e injustificada la libertad de trabajo del empleado y la libertad de selección del público en general.[54] Como consecuencia, no se podrá modificar la voluntad de las partes para ajustarla a normas razonables, y se declarará nulo todo pacto de *no competir* que no cumpla con las anteriores condiciones.[55]

Igualmente, la interpretación de los contratos, en primer lugar, se enfoca en encontrar la verdadera voluntad de los contratantes. Así, la *voluntad real* es, ante todo, la voluntad que presidió la formación del contrato.[56] Por tanto, la interpretación debe dirigirse a que el contrato o cláusula sea eficaz.[57] Como resultado, al interpretar una *cláusula de no competencia* no tan sólo se deben evaluar los criterios que rodean el acuerdo entre las partes, sino la verdadera voluntad de las partes. Concluyentemente, en Puerto Rico, como norma general, los acuerdos de *no competencia* son válidos al palio del principio de la *libertad de contratación*.

---

[53] *Íd.*
[54] *Íd.*, en la pág. 177.
[55] *Íd.* (énfasis nuestro).
[56] L. Díez – Picazo, *Fundamentos Del Derecho Civil Patrimonial I; Introducción Teoría del Contrato*, 6ta edición, Civitas (2007)., pág. 498.
[57] *Íd.*, pág. 499.

- III -

En el caso de marras, los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** puntean que se debieron desestimar las reclamaciones contenidas en las alegaciones números 16 y 17 de la *Demanda* por ser remedios solicitados en violación a la *cláusula de no competencia* contenida en el *Contrato*. Además, reseñaron que en la *Sentencia Parcial* no se consignaron los hechos que quedaron incontrovertidos.

De otro lado, el señor **RODRÍGUEZ GONZÁLEZ** señaló que las causas de acción versan sobre un incumplimiento de contrato; enriquecimiento injusto; y daños y perjuicios. Añadió que, las alegaciones números 16 y 17 de la *Demanda* surgen de las omisiones y actuaciones realizadas por los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** en detrimento de su establecimiento **TRUCK STOP**.

Nos corresponde evaluar las alegaciones 16 y 17 de la *Demanda* para determinar si, en efecto, están basadas en la cláusula 30 del *Contrato*. En primer lugar, nos incumbe precisar si la mencionada estipulación constituye una *cláusula de no competencia* a la luz de las normativas jurisprudenciales o si por el contrario no lo es. Por último, debemos analizar si los daños económicos alegados y ascendentes a $168,000.00, emanan de la propia cláusula 30 del *Contrato*. Veamos.

La cláusula 30 del *Contrato* expresa:[58]

TREINTA: La parte ARRENDADORA, Truck Stop Bar & Grill, Corp. es dueña del **concepto desarrollado** en el negocio objeto del presente contrato de arrendamiento y la parte ARRENDATARIA **podrá hacer uso de dicho concepto mientras dure el término de este arrendamiento**, acordando ambas partes que la terminación de este contrato, por la causa que sea, la parte ARRENDATARIA **se abstendrá de operar cualquier negocio con un concepto similar**, ya sea por sí misma, a nombre de un tercero o a nombre de una corporación o sociedad.[59]

---

[58] Apéndice del *Certiorari*, pág. 36.
[59] (énfasis nuestro).

Adviértase que esta cláusula va dirigida a proteger **el concepto desarrollado** del establecimiento. De igual manera, al mencionar la rescisión o terminación del contrato "*por la causa que sea*" persigue principalmente prohibir la operación de **un concepto similar** en otro negocio. Por lo que, al interpretar la estipulación en su totalidad debe entenderse que los señores ARCE COLLAZO y RAMOS BETANCOURT, parte arrendataria, -al obligarse- no puede dirigir o administrar un negocio cuyo concepto sea similar al de TRUCK STOP. Además, se puede descifrar que tampoco podrán utilizar el concepto desarrollado al culminar el contrato.

Ahora bien, las alegaciones 16 y 17 de la *Demanda* enuncian:

(16) La parte demandada de epígrafe por sus actos ha obligado al demandante a realizar un **cambio de concepto del establecimiento**, toda vez que el demandado inauguró y continúa operando un establecimiento **con el mismo concepto** que el establecimiento de nuestro representado a tan sólo dos minutos de distancia al establecimiento Truck Stop Corp., en adición a que se ha negado a devolver los accesos de la página de [F]acebook, a nuestro representado, perteneciente a Truck Stop Corp. y en la página de [F]acebook de su establecimiento tiene el mismo número de teléfono del establecimiento de nuestro representado como correspondiente al nuevo local.[60]

(17) Los gastos en los que ha tenido que incurrir nuestro representado **por concepto de la creación del nuevo concepto**, materiales, equipos, [y] mano de obra ascienden a la suma de $168,000.00.[61]

A todas luces, las alegaciones del señor RODRÍGUEZ GONZÁLEZ giran en torno a la protección del concepto de su establecimiento. Concretamente, la cláusula 30 del *Contrato* más allá de obligar a los señores ARCE COLLAZO y RAMOS BETANCOURT con los términos del arrendamiento, los comprometió a salvaguardar el concepto del negocio en cualquier circunstancia. Aunque el señor RODRÍGUEZ GONZÁLEZ expresamente no haya alegado una infracción a la *no competencia*, indirectamente los presuntos daños esbozados emanan de la cláusula 30. En palabras sencillas, el señor RODRÍGUEZ GONZÁLEZ busca recuperar una cantidad líquida de dinero por presuntos daños que surgieron

---

[60] (énfasis nuestro).
[61] (énfasis nuestro).

por los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** abrir un negocio a dos (2) minutos de **TRUCK STOP** con el mismo concepto.

Así pues, al dictar la *Sentencia Parcial* recurrida se dilucidó: "en la demanda no tienen como fundamento una alegada violación a una cláusula de no competencia... [s]in embargo, si se sostenía en los daños reclamados en los párrafos 16 y 17 de la demanda."[62] Por consiguiente, colegimos que, si concluyó decretar el desistimiento y archivo, con perjuicio de la causa de acción por incumplimiento con la cláusula 30 del *Contrato*, lo cierto es que, procede la desestimación de las alegaciones 16 y 17 de la *Demanda*, ello fundamentado en que los presuntos daños alegados emanan de la *cláusula de no competencia*.

Es decir, el señor **RODRÍGUEZ GONZÁLEZ** reclama daños por presuntamente incurrir en gastos excesivos al tener que cambiar el concepto de su establecimiento. Además, manifestó que los señores **ARCE COLLAZO** y **RAMOS BETANCOURT** están "operando un establecimiento **con el mismo concepto** que el establecimiento de nuestro representado **a tan sólo dos minutos de distancia al establecimiento Truck Stop Corp.**".[63] Innegablemente, para que se pueda adjudicar el presente caso en sus méritos es necesario escudriñar la cláusula 30 y determinar si los señores **ARCE COLLAZO** y **RODRÍGUEZ BETANCOURT** incumplieron el contrato al utilizar o implementar el *mismo concepto* que inicialmente emprendió el señor **RODRÍGUEZ GONZÁLEZ** en su establecimiento. Por tanto, ante el desistimiento, con perjuicio, de la causa de acción por la presunta violación a la *cláusula de no competencia* (cláusula 30) procede la *desestimación* de las alegaciones contenidas en los incisos 16 y 17 de la *Demanda*. Toda vez que para cometer tales agravios necesariamente se tenía que contravenir con la *cláusula de no competencia*.

---

[62] Apéndice del *Certiorari*, págs. 1– 2.
[63] *Íd*., pág. 11.

Resuelto lo anterior, se torna innecesario discutir el segundo señalamiento de error.

- **IV** -

Por los fundamentos antes expuestos, ***modificamos*** la *Sentencia Parcial* dictaminada el 17 de enero de 2024 por el Tribunal de Primera Instancia, Sala Superior de Arecibo, a los fines de incluir ***desestimar, con perjuicio,*** los daños reclamados en los párrafos 16 y 17 de la *Demanda*; así modificada, ***confirmamos*** la susodicha *Sentencia Parcial*, en todos sus demás extremos. En consecuencia, ***devolvemos*** el caso al foro primario para que proceda de forma compatible con nuestros pronunciamientos.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones